In the Matter of SAMUEL R. ROBINSON, Formerly Known as SAMUEL RABINOWITZ, an Attorney, Respondent.

First Department, April 11, 1930.

*Isidor J. Kresel* of counsel [*Bernard Herschkopf* with him on the brief], for the petitioners.

*Enos S. Booth,* for the respondent.

DOWLING, P. J. Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on April 6, 1914, under the name of Samuel Rabinowitz. On September 25, 1918, he changed his name to Samuel R. Robinson.

The petition charges the respondent with misconduct as an attorney at law in the solicitation of retainers in personal injury cases, with specific instances of solicitation set out. The answer of respondent denied the charges. The matter was referred to a referee to take testimony in regard to the charges and to report the same with his opinion. The learned referee has duly reported and petitioners now move that respondent be adjudged guilty of professional misconduct and for such other action as the court may deem proper.

Respondent is a member of the firm of Raphael & Robinson, with offices at 291 Broadway, New York. This partnership has existed for twelve years and the office had been located at the address stated for about four years prior to the hearings herein. The nature of the practice of the firm has been largely negligence, and about sixty per cent of their cases came from the Harlem district of New York. Asked how he first became attorney for claimants in the northern part of the city of New York respondent testified: " I had met a Mr. John R. Anderson who was the proprietor of a drugstore in Harlem and became quite friendly with him [Mr. Anderson is a colored man]. I first met him at the Van Cortlandt Park golf links in about 1917; he and I became quite friendly and, through him, I met several physicians who were practicing in his vicinity; I met Dr. Hoag, Dr. Nurse, Dr. Savory, Dr. Griffin, Dr. Profit and several others; through these physicians and through Mr. Anderson, I met other physicians and, in the course of time, my practice became larger and larger; it was in

that way that I originally came in contact with the people of Harlem." About 400 cases a year were obtained through these physicians and the druggist. The record discloses that respondent rendered legal services to some of these doctors for which no charge was made. In about forty per cent of the cases referred to respondent by these doctors the claimants owed the doctors for medical services. Respondent's procedure in a case where the patient owed the doctor he described as follows: " I would confer with the patient — my client — and with the doctor; invariably, the amount stated by them was identical; where a client refused to permit any collection, I instructed that client to see the doctor himself or herself." Respondent did not deduct the claim of the doctor from the recovery, but, he testified, " I would do this — whatever amount the client would be entitled to — instead of making just one check for that amount, I would make one check to the client's order for the amount of the bill and the balance in another check to the client, having the client endorse the check for the bill over to the doctor." Respondent testified that if the client objected to that procedure, he paid the client in full. Dr. Nurse testified that he refused to take accident cases if the patients did not go to Mr. Robinson; his reasons, he explained, due to his previous experience with accident cases, were " *first*, an inability to collect a bill; *second*, my frequent presence in court, and, *third*, an inadequate disposition of the case so far as the patient was concerned." Dr. Nurse further testified: " If I took an accident case, it had to be Mr. Robinson; otherwise, I wouldn't be in the case; if I found out otherwise — if they had another attorney — because of certain experiences I had, I would go to the extent of returning the fee that I might have collected." In addition to rendering legal services for which no charge was made, and collecting bills for these physicians, the record discloses that respondent was in the habit of making Christmas gifts to them in the form of cigars, candies, turkeys, etc.

There is a conflict in the testimony of the respondent given before the referee with that given by him before Mr. Justice WASSERVOGEL in the ambulance chasing investigation. Before Mr. Justice WASSERVOGEL his testimony is to the effect that these physicians sent him cases pursuant to an " agreement " or " arrangement " whereby in exchange for cases sent to him he was to render legal services without making any charge therefor. Before the referee his testimony is that these cases were sent out of pure friendship, appreciation of his competence, his consideration in saving the time of doctors which they might have to lose in court, and his persuading clients to pay the doctors' bills. The reference

to any "agreement" or "arrangement" is attributed to an unfortunate use of terms.

The referee states: "I think that testimony [the testimony of the physicians] shows that each of them sent accident cases to the respondent because the respondent rendered efficient services to the patients, because the respondent collected from the patients when cases were settled what was due the physician and because respondent minimized the loss of time incident upon court attendances. I think it may also be assumed that as time went on, these physicians realized that the respondent would render them such legal services as they required and would make no charge therefor. There is, however, no evidence from any of these physicians that the failure of the respondent to render a bill for legal services was pursuant to any agreement."

The record does not sustain the charges as to solicitation.

The report of the referee states: "It might be well to call the attention of the Court at this point to the fact that the respondent states that since December, 1928, he has refused and refrained from taking retainers in any negligence cases, that he has been proceeding to wind up his practice in so far as it concerns negligence cases and has made arrangements to turn over to another attorney such cases as are still pending in his office. Respondent says he does not intend to again enter into the practice of law in what is known as the taking of negligence cases, that he and his partner have completely destroyed their organization for the handling of negligence cases and that they are about to engage in a commercial practice."

In *Matter of Fieldsteel* (228 App. Div. 470) we condemned the close alliance existing between physicians and an attorney, similar to that disclosed in this record. In view of the fact that respondent has ceased this practice, we think the proceeding may be dismissed, with the indication that this court disapproves of the practice of attorneys acting as gratuitous collection agencies for physicians' fees or rendering legal services free of charge to physicians who recommend their patients to the attorneys for legal advice or action, even if such rendition of free services is without prior agreement or arrangement.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Proceeding dismissed.