In the Matter of RAYMOND M. ARIOLA, an Attorney, Respondent. In the Matter of SAUL SCHWARTZ (Also Known as SAUL A. SCHWARTZ), an Attorney, Respondent.

First Department, July 1, 1937.

*George Trosk* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*John H. Gamaldi* and *Morris E. Packer*, for the respondent Raymond M. Ariola.

*Saul Schwartz* (also known as *Saul A. Schwartz*), respondent in person.

MARTIN, P. J.   The respondents Raymond M. Ariola and Saul Schwartz, together with one Dr. Leo Ariola, each *pleaded guilty* to an information charging them with the crimes of soliciting business on behalf of an attorney, of aiding and abetting in the solicitation of such business, and of employing a person for that purpose, in violation of sections 270-a, 270-c and 270-d of the Penal Law.   They were sentenced to three months in the penitentiary and served such term.

When the aforesaid facts were presented to this court by the grievance committee of the Bar Association the respondents contended that, notwithstanding their pleas of guilty as aforesaid, they were in fact innocent of the charges. The matter was referred to an official referee for hearing and he has submitted a report in which he finds the respondents guilty as charged. He further reports that the respondents were not as frank and truthful as they should have been if they expected clemency. He makes no distinction between them as to the degree of culpability with respect to the matters involved in the information or as disclosed upon the hearing.

The referee found both respondents guilty as charged. Each endeavored to place responsibility upon the other, but a review of their testimony demonstrates that each of them is guilty.

The respondents were associated in the practice of the law. They occupied the same room, Ariola being the sublessee. They shared a desk and a filing cabinet. Dr. Leo Ariola, a brother of the respondent Raymond M. Ariola, was an interne at Columbus Hospital. Within a period of twenty months beginning September 1, 1934, he referred about ten accident cases to the respondents. He admitted that he actively solicited these cases. Although he denied any agreement had been entered into to compensate him for his services, his testimony discloses that he fully expected to be paid. In this connection he testified:

" Q. You felt that if they were doing the right thing by you they ought to give you something? A. Something like that. * * * Q. You would think it would be a dirty piece of business on their part if they didn't take care of you in these cases, to put it in plain ordinary language, isn't that so? A. Oh, yes, sure."

He stated that every time he telephoned a case to Mr. Schwartz he placed in his bureau drawer in the hospital a slip of paper with the name of the injured person written thereon. He claimed this was to avoid the possibility that the janitor might find such paper in the waste basket. There was a rule in the hospital forbidding internes to recommend lawyers to patients.

There is proof in the record that in the " Feldman " case Dr. Ariola was given forty dollars by the respondents and that this payment represented one-third of the net fee received by the respondents. The explanation offered by respondents with respect to this payment is that it was a " gift " to the doctor. Upon the hearing before the referee, Dr. Ariola attempted to deny his testimony before the district attorney to the effect that he expected

to be paid for the cases he referred to respondents, and he said that such testimony was given to "pacify" the district attorney, as it was expected that the case would be dropped. After this attempted denial, however, the witness definitely admitted, in the testimony set forth above, that he expected to be paid by the respondents.

In nine of the ten cases referred by Dr. Ariola, the retainers were executed in the name of Schwartz. According to the latter's admissions, this was done to conceal the fact that the injured persons were represented by a brother of the physician who would be called to testify concerning the injuries. The question of deciding in whose name the retainers were to be executed arose when the first case was referred by Dr. Ariola. That was the O'Brien case and the respondents decided to use Schwartz's name for the aforesaid reasons.

Ariola denied this and testified that when his brother telephoned him to go to the hospital and get the retainer, he refused to do so as he deemed it unethical. Notwithstanding these alleged scruples, which he testified he mentioned to Schwartz, he did not hesitate to ask the latter to go and obtain the retainer.

It appears from the record that O'Brien was a "flopper" who made a practice of feigning injuries by dislocating his joints. He brought two other cases to the office of the respondents after they first represented him. Schwartz admitted that he called on O'Brien at the Cadillac Hotel after he knew he was a "flopper" and that he there gave him a check drawn to the order of an assumed name under which O'Brien was registered at the hotel. Incidentally, O'Brien staged another fall at the hotel, made a claim against it and the claim was later settled. This incident is not an element of the charges herein but it serves to emphasize the character of the first client referred by Dr. Ariola and the fact that Schwartz continued to have relations with him after learning that he was dishonest.

As the result of a simulated accident in New Jersey, both O'Brien and Schwartz were indicted. It was there charged that O'Brien telephoned Schwartz and gave him the location of premises at which he intended to stage an accident and inquired whether the owner would be able to respond to a judgment. Schwartz, after investigation, advised O'Brien that the owner was financially responsible, whereupon O'Brien "did his stunt" and brought suit against the owner. Schwartz was convicted after a jury trial in New Jersey. Ariola furnished the bail in that action.

In the course of an investigation in connection with the New Jersey action, a detective from the New Jersey police department

interviewed Ariola and made an appointment to inspect his office files and records. In anticipation of that visit, Ariola went to the office at night and abstracted certain of the files. On the jackets of these files were notations, including, among others, a record of moneys which had been advanced to the plaintiffs therein. He destroyed said jackets and substituted new ones containing no notations except the names of the cases, causing the writing on the new jackets to be made by a third party so that his handwriting would not appear thereon. He also procured from Schwartz the checks drawn in distributing the fees received in said cases and destroyed the same. Ariola claimed this was done because he was afraid his connection with the matter would be given great publicity on account of his connection with the office of Mr. Thomas E. Dewey, but that he subsequently realized how wrong and unwise was his conduct and voluntarily disclosed his acts to the district attorney. In the course of Ariola's examination by the district attorney, he testified that the detective came to the office about two days following his interview with him; that he had not been to the office or spoken to Schwartz in the interim; that he had not taken or destroyed any papers in the office; that he did not know whose handwriting was on the jackets; and that the papers were in precisely the same condition as prior to the appointment for inspection. Ariola subsequently admitted to the district attorney that the aforesaid statements were false. The real reason for this disclosure, however, appears to be the fact that the district attorney had been investigating the matter.

Schwartz testified that he knew nothing of Ariola's acts in changing the records; that he had been requested by Ariola to meet him in his automobile at a designated place and that while waiting there the files were abstracted by Ariola. While this appears to be the fact, it is clear that the respondents were working together. It was in connection with charges against Schwartz in New Jersey that this investigation of the records of the New York office was initiated. With respect to the checks that were destroyed, it is admitted by Ariola that he and Schwartz discussed the possibility that Schwartz might need those as evidence. The respondents both agreed that in such event photostatic copies could be made from the records of the bank.

It is further admitted by both respondents that in one of the cases referred by Dr. Ariola the sum of thirty dollars was paid to an adjuster for procuring a better settlement from the insurance company than the respondents could have obtained. Ariola admits that he knew that the payment of money to an insurance adjuster for " fixing " the case was reprehensible, but maintained that Schwartz had referred to the adjuster as a " public " adjuster and,

therefore, he assumed that meant someone not in the employ of the insurance company. He admitted he had never heard of a "public" adjuster in accident cases. Schwartz testified he had never referred to a "public" adjuster but stated to Ariola that the amount was paid to an adjuster. Ariola further testified that he thought Schwartz was "holding out" said sum of thirty dollars, and that no payment had in fact been made to an adjuster.

The referee has reported, and the record herein demonstrates, that the respondents were guilty not only of the crimes charged but, in addition, that there was a splitting of fees with Dr. Ariola; payment of a part of a fee to an "adjuster" to procure a favorable settlement of a case by an insurance company; spoliation of evidence; false testimony before the district attorney; false and evasive testimony before the official referee herein; and in addition, the conviction of Schwartz in New Jersey for complicity with a client and procurer of business in a simulated accident. Under these circumstances the respondents' urgent pleas for clemency and an opportunity to continue in their profession awaken no response.

The respondents should be disbarred.

O'MALLEY, TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

In each proceeding: Respondent disbarred.