THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILBUR J. SCHNEIDER et al., Defendants, and SOL GALE, Appellant.

First Department, March 10, 1964.

*Herbert S. Siegal* for appellant.

*Irving Anolik* of counsel (*Isidore Dollinger, District Attorney*), for respondent.

BREITEL, J. Defendant, an insurance broker, has been convicted, after a jury trial, of the crime of soliciting legal business for a lawyer in violation of section 270-a of the Penal Law. Two lawyers who were tried with defendant, and for whom he allegedly solicited, were acquitted by the jury.

Defendant argues that the evidence is insufficient to establish the crime and that the verdict of the jury in finding him guilty and in acquitting the lawyers was inconsistent. The second argument is based on the view that in order for the crime of solicitation to be made out there must have been some prior arrangement or a provision for compensation between the lawyers and the solicitor.[1]

Because it is concluded that the evidence is insufficient to establish the crime of solicitation, it is not necessary to reach the question of the inconsistency of the verdict, although the matter of prior arrangement or the provision for compensated services is relevant but not conclusive on the ultimate question of whether illegal solicitation is established. On these conclusions the judgment of conviction should be reversed and the indictment dismissed.

In considering what are the facts in this case, the court, as was the jury, is bound by the record. This caveat is appropriate because in this case the recurring recommendations of the lawyers by the defendant insurance broker are strongly suggestive of prior arrangements and one may even speculate of provision for compensation. But strong suggestion and speculation are not substitutes for probative evidence. If there were more to this case than the recurring recommendations arising out of pre-existing relationships, which will be described, there was a failure of proof and perhaps of investigation.

Defendant Gale was in insurance broker. He had insurance clients, some of whom were friends or clients of years' standing, who had sustained various accidents. In each of the 11 instances which were submitted to the jury, the client had come to Gale's

---

1. In this case the indictment charged action in concert between defendant and the lawyers.

office to report the accidents in connection with insurance policies being serviced by Gale. In each case, mostly on the initial inquiry of Gale, the question was raised whether the client had an attorney. When Gale was told that the client had none, he recommended one of the lawyers and arranged for a meeting. One of the lawyers had his name on Gale's window and occupied space in the street store office.[2] In each case but one a claim was prosecuted by the lawyers, and in each case a statement of retainer was filed with the Appellate Division, as required by the court rules, giving Gale as the recommender of the client. This, viewed most strongly against Gale, was all that was proven, eliminating collateral details. Gale did not testify. The jury convicted Gale on only 3 of the 11 instances submitted. This is all that remained of the 18 instances originally charged in the indictment.

The statute provides: " § 270-a. Soliciting business on behalf of an attorney. It shall be unlawful for any person or his agent, employee or any person acting on his behalf, to solicit or procure through solicitation either directly or indirectly legal business, or to solicit or procure through solicitation a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal services, or to make it a business so to solicit or procure such business, retainers or agreements."

The term " solicitation " is an elastic one and its meaning in this context must be derived from the history of the statute and the relevant decisional law. Prior to 1935 (L. 1917, ch. 783) section 270 of the Penal Law made it unlawful " to make it a business to solicit employment for a lawyer " (*People* v. *Meola,* 193 App. Div. 487). In 1935 section 270-a was enacted (L. 1935, ch. 578) to prevent " ambulance chasing " and kindred activity (*Matter of Murphy,* 254 App. Div. 770; *Matter of Rosenthal,* 250 App. Div. 421, 426, affd. 276 N. Y. 676; *People ex rel. Moses* v. *Adams,* 172 Misc. 143, 145). It was amended in 1939 to read in its present form (L. 1939, ch. 822). Thus, the prohibition was extended well beyond the "business of solicitation."

It is clear enough that where there is a prior arrangement between lawyer and layman for the recommendation of legal business, or where there is the giving and receiving of any compensation for such recommendation the statute applies (*People* v. *Beldegreen,* 298 N. Y. 601; *Matter of Ariola-Matter of Schwartz,* 252 App. Div. 61; cf. Canons of Professional Ethics, canon 28; see, also, Penal Law, § 270-d, expressly applicable to the lawyer who employs the lay solicitor). It is in the absence

2. In the opening by one of counsel it was said that Gale and this lawyer were cousins. The fact was not proved.

of evidence of such prior arrangement or compensation that a more difficult question arises.

Lawyers themselves may not " permit solicitation of professional employment * * * by personal communications or interviews not warranted by personal relations " (Canons of Professional Ethics, canon 27; Drinker, Legal Ethics, pp. 252–254, 259–263). Prior to 1935 there were disciplinary cases in which the court did not condemn the recommendation by physicians to patients of lawyers without a showing of an arrangement for compensation, but expressly stated its displeasure at such recommendations made systematically (e.g., *Matter of Robinson*, 229 App. Div. 119, 122; *Matter of Fieldsteel*, 228 App. Div. 470, 478).

Thus far no canon and no penal statute condemns the recommendation of lawyers to persons in a personal, social or professional relationship, pre-existing the making of the recommendation and reasonably concerning matters referable to the relationship. But even such a pre-existing relationship would not sustain a systematic solicitation utilizing the relationship as a cover for directing legal business to a lawyer (Drinker, *op. cit. supra*, pp. 249–252). In a proper case the evidence might well sustain a conviction under section 270-a, establishing such systematic solicitation, even in the absence of a prior agreement for it or for compensation. To be sure, it will be very rare that such a case would arise without it being just as easy to establish a prior arrangement and probably the payment or the agreement for the payment of compensation for the services rendered in soliciting legal business.

In this case Gale as an insurance broker sustained a relationship to his insurance clients. On the bare conversations recounted it cannot be said that he was not performing a function directly involved in the advising of his clients in an area not too remote from the subject matter of their relationship. Some were friends. All had been doing business with him for some time. Again, on the bare conversations recounted it cannot be said that he was stirring up litigation or, with design, systematically soliciting legal business for the lawyers, as distinguished from giving advice to his insurance clients. In short, there was no showing that he was an " officious intermeddler "[3] that he was abusing a pre-existing relationship, or that he was using the cover of his brokerage relationship to channel legal business to the lawyers. Maybe the latter was the case, but it was not proven.

---

3. As to the status of the " officious intermeddler ", see, generally, Anno.—Barratry and Champerty as Crime, 139 A. L. R. 620, *passim*.

Accordingly, the judgment of conviction should be reversed on the law and the facts and the indictment dismissed.

BOTEIN, P. J., RABIN, STEVENS and EAGER, JJ., concur.

Judgment of conviction unanimously reversed upon the law and upon the facts and the indictment dismissed.