Duncan S. McNab, J.
On August 16, 1977, defendant Manlio Severino pleaded guilty, under count one of Putnam County Indictment No. 25-1976, to the crime of offering a false instrument for filing, first degree, and under an amended fifth count of the within indictment covering the period July 1, 1972 to August 31, 1973, to the crime of grand larceny, second degree. In essence, defendant pleaded guilty to having filed, in his capacity as business manager of the Kent Nursing Home, the Department of Health Form HE-2P for the year 1971 with the New York State Department of Health, with the intent to defraud, knowing such form showed certain expenditures as having been incurred in connection with the furnishing of patient care when in fact they had not been; and that, as a result of said fraudulent entries during the period July 1, 1972 through August 31, 1973, the Kent Nursing Home obtained a sum of money, in excess of $1,500 in Medicaid reimbursement, to which it was not legally entitled.
In consideration of the plea, the court, with the concurrence of the Special Prosecutor, promised the defendant that the maximum sentence to be imposed would be one-year confinement to jail and a fine to be imposed after a hearing pursuant to section 80.00 of the Penal Law and CPL 400.30. Upon the hearing, the People (i.e., the Special Prosecutor for Nursing Homes) recomputed the rate of Medicaid reimbursement so as to show the difference in the rate for the period July 1, 1972 to August 31, 1973, had the fraudulent items not been included in the 1971 HE-2P form and thereby used to calculate the reimbursement rate; the recomputation was based exclusively on the amount of the three fraudulent items contained in the two counts (i.e., Nos. 1 and 5) to which defendant pleaded guilty, namely $37,946.72 for Limpio Cleaning Services, $4,600 for one Edmea Patrella and $4,600 for one Ida Zuzzolo; which, by way of the proof adduced upon the instant hearing, conclusively showed overpayment to the Kent Nursing Home of $63,384.36 during the period in question to which the home was not legally entitled.
The novel question presented is, whether such gain can be deemed to be the defendant’s gain within the meaning of *900 subdivision 2 of section 80.00 of the Penal Law, as that section read prior to amendment effective September 1, 1977.[1] That section provided, in pertinent part: "a fine for a felony shall be a sentence to pay an amount, fixed by the court, not exceeding double the amount of the defendant’s gain from the commission of the crime.” (Emphasis added.)
Defendant contends that the said provision must be construed to mean only that gain which accrued to the defendant personally, and that the proof adduced by the People upon the instant hearing failed to show that defendant himself pocketed any of the Medicaid money to which the Kent Nursing Home was not legally entitled. The People contend, however, that establishing a gain to a third party, as here (i.e., to the Kent Nursing Home) would satisfy the statute. Neither the court nor either of the parties has been able to uncover any case law which sheds any light on this particular issue. However, as a matter of statutory construction, and on grounds of public policy, the court is persuaded here that the People’s position is the correct one.
Initially, the court would note the Commission Staff Notes to subdivision 3 of section 80.00 of the Penal Law contained in the Penal Law volume to the Consolidated Laws Service, wherein the standard for calculating the amount of "gain”, (i.e., "the amount of money * * * derived from the commission of the crime, less the amount * * * returned to the victim * * * prior to * * * sentence”), is deemed to be "fairly broad * * * leaving] some matters open for judicial resolution”. In this context, it is significant that the term "gain” has been equated with the term "benefit”. (Ballentine’s Law Dictionary, 3d ed). Under subdivision 17 of section 10.00 of the Penal Law, "benefit” is defined as "any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.”
Similarly, under the larceny provisions of the Penal Law, the term "obtain” is defined as follows: "includes, but * * * not limited to, the bringing about of a transfer or purported transfer of property or of a legal interest therein, whether to the obtainer or another.” (Penal Law, § 155.00, subd 2, emphasis added.) Additionally, the crime of larceny is itself defined under subdivision 1 of section 155.05 of the Penal Law as follows: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate *901 the same to himself or to a third person, he * * * obtains or withholds such property from an owner thereof.” Thus, to limit "defendant’s gain” under subdivision 2 of section 80.00 of the Penal Law strictly to that amount appropriated by the defendant himself, as defendant would urge, would seem to be taking the language of subdivision 2 of section 80.00 out of proper context with the above-noted related provisions of the Penal Law. The court would note that it is a basic rule of statutory construction that: "if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment” (see McKinney’s Cons Laws of NY, Book 1, Statutes,§ 98.) This same volume of McKinney’s at section 111 provides that: "statutes are not to be read with literalness that destroys meaning, intention, purpose or beneficial end for which the statute has been designed.”
Additionally, section 5.00 of the Penal Law, entitled "Penal law not strictly construed”, provides that: "[t]he general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” (Emphasis added.)
Finally, as noted in the very recent case of People v O’Gorman (91 Misc 2d 539), section 141 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1, Statutes) sets forth a rule of construction which reads as follows:
"It is a fundamental rule of statutory interpretation that of two constructions which might be placed upon an ambiguous statute one which would cause objectionable consequences is to be avoided. Stated in another way, the rule is that the construction to be adopted is the one which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief, or absurdity. The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation.
"Thus, while consequences cannot alter statutes, they may help fix their meaning, and are important as a clue to the meaning; and courts are not bound to close their eyes to consequences. Where possible a statute will not be construed so as to lead to evil, unjust, oppressive, or absurd consequences or to self contradiction. Nor will courts impute to lawmakers a futile and frivolous intent * * *
*902 "It has further been held that a construction should not be adopted which * * * tends to sacrifice great public interests, or which leads to a harmful result.”
As a matter of judicial construction then, this court feels the fair import of the term "defendant’s gain, contained in subdivision 2 of section 80.00 of the Penal Law may include the gain to a third party of the defendant’s choice or to a third party at the consent, express or implied, of the beneficiary; additionally, on grounds of public policy, this court feels that a defendant such as the defendant herein, who has pleaded guilty to a crime of grand larceny, second degree, based on an intentional fraud, should not be able to insulate himself from a possible fine by maintaining legal ownership of a business in the names of his wife and son, as partners, while he effectively runs the business operation in his stated capacity of business manager. Moreover, upon information and belief, this court’s holding is not totally without precedent. In a memorandum of law submitted to the court and defense counsel, the Office of the Special State Prosecutor for Nursing Homes, by Robert Meehan, Esq., notes that in the case of People v Christiano,[2] Justice Eugene W. Bergin of the County Court of Monroe County sentenced the defendant, convicted therein after a jury trial of two counts of grand larceny, second degree, and one count of attempted grand larceny, second degree, to pay a fine of some $63,000 with no incarceration or period of probation. Similarly to the defendant herein, Mr. Christiano was the salaried administrator of the Lake Shore Nursing Home in Rochester, New York; while Mr. Christiano’s father owned a one-third interest as a partner in the home, the defendant owned no interest whatsoever, nor was there any proof that the defendant personally received any of the moneys fraudulently obtained.
Thus, upon all the testimony, the court would find that the People have proved, by a preponderance of the evidence as required per CPL 400.30, that a total gain of $63,384.36 accrued to the defendant as a result of this grand larceny, second degree, crime.

. See chapter 352 of the Laws of 1977.

. This case is reported at 87 Misc 2d 962; however, in the written opinion therein, Justice Bergin, in holding that the form HE-2P is a written instrument, confines himself strictly to a discussion of that sole issue.