OPINION OF THE COURT
Felice K. Shea, J.
John Esposito, former Police Chief of Metro-North Commuter Railroad Company, has been indicted and charged with computer trespass in violation of Penal Law § 156.10 (2) (17 counts), unauthorized use of a computer in violation of Penal Law § 156.05 (17 counts), falsifying business records in the first degree in violation of Penal Law § 175.10 (8 counts) and official misconduct in violation of Penal Law § 195.00 (1) (3 counts). All charges arise from the alleged misuse of the New York State Police Information Network (NYSPIN), a computer system containing individual criminal histories. Defendant moves for an order seeking dismissal of the indictment on multiple grounds.
charges of official misconduct
Defendant’s motion to dismiss the indictment against him presents the issue of whether the "benefit” intended to be obtained by a public official charged with official misconduct under Penal Law § 195.00 must be personal to the defendant. Counts 10, 33 and 39 charge defendant with official misconduct, on different dates and concerning different individuals, as follows: "and the grand jury aforesaid, by this indictment, further accuses the defendant of the crime of official misconduct, in violation of Section 195.00 (1), committed as follows: That defendant, a public servant, to wit: an officer of the Metro-North Police Department, on or about [date specified] in the County of New York, with the intent to obtain a benefit for the Metro-North Commuter Railroad, committed an act relating to his office but constituting an unauthorized exercise of his official functions, to wit: caused the New York State Police Information Network Computer service to be used to obtain criminal history information about [individual named] for a purpose not connected with the administration of criminal justice, knowing that such act was unauthorized.”
Section 195.00 (1) of the Penal Law defines official misconduct as follows:
"A public servant is guilty of official misconduct when, with intent to obtain a benefit or to injure or deprive another person of a benefit:
*921 "1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized”.
Penal Law § 10.00 (17) states that " '[b]enefit’ means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.” Penal Law § 10.00 (17) permits "person” to be defined as a corporation or governmental instrumentality, where appropriate.
Analysis of the statutes, read together, makes it clear that a public servant, to be guilty of official misconduct, must intend to obtain a benefit to himself. While Penal Law § 10.00 (17) defines a benefit as "including] a * * * gain or advantage to [another] person”, a fair reading of these words compels the conclusion that the benefit to another person (or entity, where appropriate) must be at least indirectly of benefit to the accused, as, for example, a benefit to the accused’s family, to a friend or to the accused’s business. (See, e.g., People v Severino, 91 Misc 2d 898, affd 63 AD2d 1010, where Penal Law § 10.00 (17) is viewed as including a benefit to a defendant’s business.) Penal Law § 10.00 (17), by using the words "and includes” rather than the word "or” limits "benefit” to a gain or advantage to the beneficiary.
There is nothing in the case law that contradicts this construction of Penal Law § 195.00. In 1969, an upstate trial court recited the history of the statute and its predecessor provisions and held that the crime of official misconduct requires "[a] culpable motive * * * which must be directly connected with the duty which the public servant [violated] * * * and such motive must be of a venal nature.” (People v Thompson, 58 Misc 2d 511, 513.) The culpable mental state for the crime of official misconduct is defined by Donnino, Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law § 195.00, at 431) as "a specific intent to obtain a benefit or to injure another person or deprive another person of a benefit.” A few courts have fleshed out the statutory definition of "benefit” in the context of bribery and bribe receiving under Penal Law article 200. (See, e.g., People v Hyde, 156 App Div 618; People v Cavan, 84 Misc 2d 510; People v Adams, 86 Misc 2d 634.) In all cases, the "benefit” was required to be more than merely tangential and had a nexus personal to the defendant.
Counts 10, 33 and 39 of the indictment charge defendant *922 with committing the crime of official misconduct "with intent to obtain a benefit for the Metro-North Commuter Railroad”, defendant’s employer. Defendant’s alleged intent to benefit the railroad does not spell out a benefit to himself, even remotely. Nor was there evidence before the Grand Jury of a benefit to defendant. Accordingly, the evidence presented to the Grand Jury was insufficient to support the official misconduct charges and the factual allegations of those three counts fail to state the crimes charged. The official misconduct charges are hereby dismissed.
CHARGES OF COMPUTER TRESPASS AND UNAUTHORIZED USE OF A COMPUTER
Defendant challenges the factual sufficiency of each count of the indictment including the counts charging computer trespass and unauthorized use of a computer.
CPL 200.50 (7) requires that each count of an indictment contain-
"A plain and concise factual statement * * * which * * * "(a) asserts facts supporting every element of the offense charged and the defendant’s * * * commission thereof with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation”.
CPL 200.70 (2) (b) bars amendment of an indictment for the purpose of curing legal insufficiency of the factual allegations.
Counts 1, 4, 6, 8, 11, 14, 17, 20, 22, 24, 27, 29, 31, 34, 37, 40 and 43 charge defendant with computer trespass in identical language, on different dates, as follows:
"the GRAND JURY OF THE EXTRAORDINARY SPECIAL AND TRIAL TERM OF THE SUPREME COURT OF THE STATE OF NEW YORK, county of new york, by this indictment, accuses the defendant of the crime of computer trespass, in violation of section 156.10 (2) of the Penal Law, committed as follows:
"The defendant, on or about [date] in the County of New York, knowingly caused to be used a computer service, to wit: the New York State Police Information Network, without authorization, to wit: in excess of the permission of the New York State Police Department, which, as the defendant had been notified, limited such access to purposes connected with the administration of criminal justice.”
Penal Law § 156.10 provides:
"§ 156.10 Computer trespass
"A person is guilty of computer trespass when he knowingly *923 uses or causes to be used a computer or computer service without authorization and * * *
"2. he thereby knowingly gains access to computer material.”
Comparison of the statute with the indictment shows that the statutory requirement, "he thereby knowingly gains access to computer material”, is not supported by factual allegations in any of the computer trespass counts.
Counts 2, 5, 7, 9, 12, 15, 18, 21, 23, 25, 28, 30, 32, 35, 38, 41 and 44 charge defendant with unauthorized use of a computer, in identical language, on different dates and concerning different individuals, as follows:
"and the grand jury aforesaid, by this indictment, further accuses the defendant of the crime of unauthorized use of a computer, in violation of Section 156.05 of the Penal Law, committed as follows:
"The defendant, on or about [date] in the County of New York, knowingly caused to be used a computer service, to wit: the New York State Police Information Network, without authorization and thereby knowingly gained access to computer material, to wit: criminal history information about [name], the disclosure of which was otherwise prohibited by law.”
Penal Law § 156.05 reads:
"§ 156.05 Unauthorized use of a computer
"A person is guilty of unauthorized use of a computer when he knowingly uses or causes to be used a computer or computer service without authorization and the computer utilized is equipped or programmed with any device or coding system, a function of which is to prevent the unauthorized use of said computer or computer system.”
Again, comparing the statute with the indictment, it appears that the statutory language, "and the computer utilized is equipped or programmed with any device or coding system, a function of which is to prevent the unauthorized use of said computer or computer system”, is unsupported in the factual portions of the charges of unauthorized use of a computer.
An indictment traditionally serves three purposes: the constitutionally based right of an accused to fair notice of the accusations made against him, the protection against double jeopardy, and the assurance that the crime for which a *924 defendant is brought to trial is the one for which he was indicted. (People v lannone, 45 NY2d 589, 594-595.) Defendant attacks the indictment on the grounds that the computer counts fail to comply with CPL 200.50 (7) (a) and fail to accord him fair notice. He argues that the 17 counts of computer trespass as well as the 17 counts of unauthorized use of a computer are jurisdictionally defective in that they do not assert facts supporting every element of the offense charged.
The People acknowledge that each of the disputed 34 counts is defectively pleaded, but they maintain that the defects are merely technical and dismissal is not required under the circumstances herein. The People note that the Grand Jury heard sufficient evidence and received proper instruction on all elements of each of the 34 computer crimes. They contend that the defendant has received fair notice of the charges against him and they argue that recent Court of Appeals cases reduce the importance of the factual assertions in an indictment so long as defendant is not prejudiced. The People cite the comment of now Judge Joseph W. Bellacosa, Practice Commentary (McKinney’s Cons Laws of NY, Book 11A, CPL 200.50, at 461): "The cases say, in essence, that so long as there is no prosecutorial bad motive and so long as bills of particular * * * [sic] to amplify the indictment then factual assertions even plain and concise ones can largely be dispensed with, at least for purposes of surviving a motion to dismiss as insufficient or defective.”
A review of the cases relied on by the People shows that no court has overlooked pleading insufficiencies as fundamental as those herein. In every case, a relatively minor omission or lack of specificity was found to be remedied by notice supplied in the bill of particulars or by the record as a whole. In addition, in all cases cited by the People except People v Morris (61 NY2d 290), the issue was not raised until after trial or plea.
In People v Ray (71 NY2d 849), an indictment omitting the word "unlawfully” in a burglary charge was upheld. In People v Motley (69 NY2d 870), the court declined to invalidate an indictment charging promoting prison contraband in the first degree where the term "dangerous contraband” was not defined. The indictment in People v Wright (67 NY2d 749) was permitted to stand although the word "unlawful” before the word "entry” in a burglary charge was omitted. In People v Trendell (61 NY2d 728), a failure to allege "larcenous intent” in an information charging petit larceny was held to be an *925 amendable defect. In People v Morris (61 NY2d 290, supra), the Court of Appeals sustained an indictment where the factual allegations were not specific as to time. (See also, People v Davis, 72 NY2d 32.)
In the leading case of People v Cohen (52 NY2d 584), the Court of Appeals upheld a charge of failure to file a tax return where the word "willfully” was omitted in the one count of a multicount indictment to which defendant pleaded guilty. No timely motion to dismiss the indictment on the ground of pleading insufficiency had been made, and, of critical importance, the indictment viewed in its entirety indicated that the People intended to prove willfulness.
Unlike the defendants in the authorities cited by the prosecution, it cannot be said that defendant here has had notice of the acts he is charged with committing. The bill of particulars served on defendant on March 31, 1989 makes no mention whatever of the factual predicates for the elements missing from the 34 charges under scrutiny.[1] The People argue that defendant had notice in the indictment of the Penal Law sections he is charged with violating and that he could have asked for particulars of the factually unsupported elements. This reasoning distorts the pleading process and places on defendant the burden of ascertaining the allegations against him. A logical extension of this argument is that it would be sufficient notice by the People merely to allege the Penal Law section number, without the need for factual amplification from any source. Such a result would read out of the law the requirements of CPL 200.50 (7) (a).
The People also point out that defendant had been served with a prior indictment, properly pleaded but dismissed on other grounds, and thus had notice of the acts upon which the People rely. But a dismissed indictment is a nullity and a defendant should not be charged with receiving notice conveyed by a document no longer part of the record. More important, the two indictments are not identical. While there is some overlap, the first indictment charged crimes of coercion in the first and second degrees and falsifying business records in the second degree not charged in the second indict *926 ment. Moreover, there are 8 new counts of computer trespass and 8 new counts of unauthorized use of a computer in the second indictment based upon incidents which were not charged in the first indictment. The defendant, understandably and properly, treated the second indictment as a new and separate instrument. Although defendant requested no new particulars for the charges in the old indictment which had been carried forward into the second indictment,[2] he did demand particulars of the counts that appeared for the first time in the second indictment. A comparison of the requests in the first demand for a bill of particulars with the requests in the second demand reveals a significant difference. The first demand has in it questions relating to the elements pleaded in the first indictment but missing from the second indictment; the second demand does not. The inference to be drawn is that defendant was not aware of the extent of the charges against him in the second indictment.
The People also argue that the defendant, in his motion papers, does not dispute the factual allegations in the indictment but intends to assert at trial a defense under Penal Law § 156.50 (1) that he had "reasonable grounds to believe that he had authorization to use the computer”. This argument is without merit. By pleading "not guilty” defendant has put into issue every material allegation of each charge against him and remains free to defend on any ground he chooses. Without fair notice of the charges against him, arguably he would not know what defenses to elect.
Under the circumstances at bar, the defendant may well have been prejudiced by the pleading omissions in the indictment. This is not a case where a technical deficiency can be remedied from the record as a whole since neither the bill of particulars nor any other document supplies the missing facts. It must be concluded that defendant has not received fair notice of the charges of computer trespass and unauthorized use of a computer and that those counts in the indictment do not substantially conform to the requirements of CPL 200.50 (7) (a).
*927 Accordingly, counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 17, 18, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 43 and 44 are dismissed with leave to the prosecutors to re-present if they are so advised. (CPL 210.20 [4].)
DEFENDANT’S RIGHT TO TESTIFY
Defendant contends that he was not accorded a fair opportunity to testify before the Grand Jury. CPL 190.50 (5) (a) confers the right to be a witness in a Grand Jury proceeding under prescribed circumstances: "(a) When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor’s information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent. The district attorney is not obliged to inform such a person that such a grand jury proceeding against him is pending, in progress or about to occur unless such person is a defendant who has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding. In such case, the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein”.
Defendant was originally indicted on July 13, 1988 as a result of a direct Grand Jury presentation, but the indictment was dismissed by order dated January 10, 1989 with leave to the prosecution to re-present. (People v Esposito, 142 Misc 2d 288.) At the time the matter was resubmitted, no action was pending against defendant in a local criminal court, or in any court, and thus the prosecution was under no statutory duty to inform defendant that a second Grand Jury presentation against him would be made. (People v LaBounty, 127 AD2d 989.) Nevertheless, as defendant acknowledges, the prosecution did inform defendant and inquired whether he wished to testify. Defendant submits an affidavit in which he states (at 17) that "[I] was inclined to appear before the Grand Jury” but defendant concedes he never furnished the prosecution with written notice as required by statute. Defendant explains *928 that he had wanted to know the details about which he might be questioned before deciding whether or not to testify. Defendant was not entitled, however, to a preview of the Grand Jury presentation. Under the circumstances, he was not deprived of a fair opportunity to testify before the Grand Jury. (See, People v Anderson, 127 AD2d 885, 886.)
THE PROSECUTION’S OFFER NOT TO INDICT
Defendant seeks dismissal of the indictment on the ground that the Special Prosecutor was guilty of overreaching when he offered to refrain from indicting if defendant would resign his office of Chief of the Metro-North Police Department. In addition, defendant argues that he is entitled to enforcement of the People’s offer.
Before this matter was presented to the Grand Jury, the prosecutor offered defendant an opportunity to avoid indictment if he would resign as Police Chief of Metro-North Commuter Railroad Company. Defendant attacks that offer as in excess of the prosecutor’s authority. However, since the law gives the prosecutor discretion as to whether to prosecute in the first instance (People v Harding, 44 AD2d 800, 801), there is nothing improper about a prosecutor offering to forego prosecution upon a condition which a prospective defendant is free to accept or reject. A defendant does not have a right, constitutional or statutory, to avoid prosecution for criminal acts he may have committed. Thus, in the absence of coercion or other impropriety, a defendant is not prejudiced by receiving a conditional offer from the prosecutor to waive prosecution. The cases cited by defendant are inapplicable.
In this case, defendant declined the prosecution’s offer, and was subsequently indicted on July 13, 1988. Shortly thereafter, defendant was discharged by his employer for purportedly improper conduct unrelated to the charges in the indictment. Defendant now seeks what he considers to be enforcement of the originally proffered bargain even though he never accepted the prosecution’s offer and it expired months ago when the prosecution sought indictment. Clearly, no enforceable agreement was reached between the parties. (See, People v Memminger, 121 Misc 2d 953.) Accordingly, this request for dismissal of the indictment is denied.
JURISDICTION OF THE SPECIAL PROSECUTOR
Defendant questions the jurisdiction of the Special State *929 Prosecutor to prosecute this matter. For New York County, the subject matter jurisdiction of the Special Prosecutor is set forth in Executive Order No. 55 (9 NYCRR 1.55), issued by the Governor pursuant to article IV, § 3 of the NY Constitution and section 63 (2) of the Executive Law. The Attorney-General of the State of New York is directed by Executive Order No. 55 to appoint a Special Prosecutor to supersede the District Attorney for the County of New York with respect to the investigation and prosecution of matters involving "any and all corrupt acts and omissions by a public servant * * * in violation of any provision of State or local law and arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York” (9 NYCRR 1.55 [I] [a]). There are three elements in subdivision (I) (a) upon which the Special Prosecutor’s jurisdiction depends: the defendant must be a "public servant”; he or she must be charged with criminal acts or omissions which are "corrupt”; and the illegal acts must be "arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice”. Defendant was admittedly a public servant on the relevant dates in the indictment. His jurisdictional challenge is directed at the second and third requirements of Executive Order No. 55 (9 NYCRR 1.55 [I] [a]).
Defendant argues that any superseders or transfers of the authority of elected prosecutors must be "fastidiously circumscrib[ed]” (People v Leahy, 72 NY2d 510, 515), and that the definition of "corrupt acts” in Executive Order No. 55 requires charges, not present in this indictment, of venality or use of the NYSPIN computer for personal gain.
The words "corrupt acts and omissions” are not, strictly speaking, defined in Executive Order No. 55. Rather, subdivision (III) (c) of section 1.55 lists five categories which " '[c]orrupt acts and omissions’ includes, but is not limited to”. The first category is "any act or alleged act by a public servant relating to his office but constituting an unauthorized exercise of his official functions”. (9 NYCRR 1.55 [III] [c] [1].) Defendant argues, with some merit, that a literal reading of this provision might sweep within its reach any and all criminal acts committed by a public servant and would give no meaning to the word "corrupt”. It is not necessary, however, to delve deeply into the problem of construing subdivision (III) (c) (1). Corrupt acts clearly are charged in counts 3, 13, 16, 19, 26, 36, 42 and 45 of the indictment which allege falsifying business records in the first degree in violation of *930 Penal Law § 175.10. Defendant allegedly made false entries in the NYSPIN criminal history log of the Metro-North Police Department with intent to conceal the commission of the crimes of computer trespass and unauthorized use of a computer. Thus, defendant is mistaken when he argues that the indictment does not contain charges of venal acts committed for personal gain.[3]
Defendant’s challenge to the third prong of the jurisdictional grant under Executive Order No. 55 (9 NYCRR 1.55 [I] [a]) is also unavailing. The court finds, consistent with appellate authority, that the indictment charges crimes which are related to law enforcement and the administration of criminal justice.
In Matter of Moritt v Nadjari (46 AD2d 784), a Judge of the Civil Court of the City of New York was indicted for conspiracy, grand larceny, perjury and tampering with a witness by the Extraordinary and Special Trial Term Grand Jury based on allegations that he employed a "no show” law secretary and then diverted the secretary’s salary to his own benefit. The Second Department held that the words "enforcement of law” in an analogous Executive Order "are, prima facie, sufficiently broad in the context of this case to sustain the Special Prosecutor’s jurisdiction.” (Matter of Moritt v Nadjari, supra, at 785.)
In People v Sam (49 AD2d 732), members of the New York City Transit Authority Police Department who were also officers of a religious society were indicted by the Extraordinary and Special Trial Term Grand Jury on charges of conspiracy and grand larceny for stealing money from the society by overpaying bills submitted by the society’s travel agent. The First Department held that although the defendants were public servants and the alleged acts were corrupt, the acts did not relate to the enforcement of law or administration of criminal justice and thus the Special Prosecutor lacked jurisdiction to prosecute.
When the Court of Appeals considered the scope of the Special Prosecutor’s jurisdiction in Matter of Dondi v Jones (40 NY2d 8), it cited People v Sam (supra), approvingly for the proposition that it is the corrupt act, as well as the person committing the act, which must relate to the enforcement of *931 law or the administration of criminal justice. The court construed the grant of jurisdiction to the Special Prosecutor in the Governor’s Executive Order as confined "strictly to the 'criminal justice [process or] system’ ”. (Matter of Dondi v Jones, supra, at 19; accord, People v Di Falco, 44 NY2d 482.) In Dondi, an attorney was charged with bribing a police officer witness to change his testimony at a civil trial, and since the Special Prosecutor was found unauthorized to investigate and prosecute acts relating to a civil action, jurisdiction was held to be lacking. In a strong dissent, Chief Judge Breitel noted the "expansive purpose of the Executive Order” and "the breadth of [its] language”. (Supra, at 27, 28.) In his words, "[t]here are fewer, if any, more broadening clauses than 'in any way’ or words like 'relating’ or 'connected’ ”. (Matter of Dondi v Jones, supra, at 28.)
In People v Rosenberg (45 NY2d 251), defendant was a lawyer charged with attempted grand larceny from his client on a theory that defendant falsely pretended that he could "fix” the client’s criminal prosecution by corruptly influencing the Judge’s law secretary. The Court of Appeals distinguished Dondi (supra) and sustained jurisdiction in the Special Prosecutor, formulating as the test that "the particular act charged as well as a person involved in that act, be sufficiently connected to the administration of criminal justice.” (People v Rosenberg, supra, at 258; emphasis added.)
All charges in the indictment herein arise out of the alleged misuse of criminal justice apparatus. According to the prosecutor, the NYSPIN computer system was installed only in the offices of law enforcement officials with the understanding, reduced to writing, that the computers would be used in compliance with written instructions restricting computer use to criminal justice purposes. Before the occurrence of the acts charged, defendant allegedly signed an agreement in which he acknowledged receipt of the instructions limiting NYSPIN usage to criminal justice purposes and agreed to abide by them. The law enforcement officials who were given access to the NYSPIN computer terminals and material were taught that the system could be used only for criminal justice purposes. The NYSPIN computers are programmed to reveal an individual’s criminal justice history only if a code identifying a specific criminal offense under investigation is entered into the computer. Defendant stands charged with making or causing to be made false entries in the logs kept to record NYSPIN computer usage. The Special Prosecutor’s jurisdiction *932 is supported by ample nexus between tKe "corrupt acts” alleged and the criminal justice system.[4]
Accordingly, the application by defendant to dismiss the indictment for lack of jurisdiction by the Special Prosecutor is denied.
INVIDIOUS SELECTIVE PROSECUTION
Defendant maintains that he is entitled to dismissal of the indictment pursuant to United States v Saade (652 F2d 1126) as a victim of invidious selective prosecution. In Saade, defendant Saade and codefendant Rodriguez were charged with and convicted of unauthorized entry into a military danger zone off the coast of the island of Vieques during a naval gunnery practice session. A flotilla of boats carrying approximately 35 people, including Saade and Rodriguez (the only people prosecuted), approached and congregated near the target area forcing cessation of naval bombardment. Saade and Rodriguez claimed they were invidiously and selectively prosecuted as punishment for political activity and in violation of their First Amendment rights to freedom of expression because Rodriguez was the president of a local fishing association opposed to naval training in the area, and Saade represented Rodriguez and the association. The court in Saade wrote (at 1135): "When considering an attack on the Government’s exercise of its broad discretion in the decision whether to prosecute a particular case, we presume that that choice has been made in good faith for reasons of sound governmental policy. * * * To overcome this presumption, defendants bear a heavy burden. Only if a defendant can establish prima facie XI) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government’s discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights[,]’ does the burden shift to the government to demonstrate that the prosecution was not premised on an invidious objective. United States v. Union Nacional de Trabajadores, 576 F.2d at 395, quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974). A defendant need not, however, present a prima *933 facie case in order to justify an evidentiary hearing. So long as the defendant alleges some facts a) tending to show that he has been selectively prosecuted, and b) raising a reasonable doubt about the propriety of the prosecution’s purpose * * * a * * * court, in the absence of countervailing reasons, should grant a request for a hearing.”
In Saade (supra), the prosecutor’s office submitted a memorandum stating that Saade and Rodriguez were the only persons prosecuted because they were the only protestors who could be identified without undertaking an extensive investigation, and that if arrests could have been safely made at the time of the demonstration, others would have been prosecuted as well. Based upon those unsworn statements, the District Court denied the motion without directing a hearing. On appeal, the prosecution’s minimal response was judged an adequate basis for denying defendants a hearing, and the trial court was affirmed.
In Matter of 303 W. 42nd St. Corp. v Klein (46 NY2d 686, 693), the Court of Appeals set forth the standard to be applied in New York where a claim of discriminatory prosecution is raised:
"The underlying right asserted by petitioner is to equal protection of the laws as guaranteed by the 14th Amendment and the New York State Constitution (art I, § 11), one of the governing principles of our society. As enunciated more than a century ago in Yick Wo v Hopkins (118 US 356, 373-374), it forbids a public authority from applying or enforcing an admittedly valid law 'with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances’. * * * To invoke the right successfully, however, both the 'unequal hand’ and the 'evil eye’ requirements must be proven — to wit, there must be not only a showing that the law was not applied to others similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification * * *.
"And, in its consideration of the merits of such a claim, as it would on a suppression motion, a court must conduct a hearing if, on the papers before it, a strong showing of selective enforcement, invidiously motivated, appears”.
In response to defendant’s claim of selective prosecution, the prosecution points out that the statutes under which defen *934 dant stands charged were enacted only recently. The prosecutor asserts that a chief of detectives in an upstate police department who apparently misused the computer was permitted by an upstate prosecutor to resign to avoid prosecution. The prosecutor here offered defendant the same option and the instant prosecution ensued only after defendant declined to exercise it. The People’s offer, discussed supra, at 928, undermines defendant’s claim that this prosecution is invidiously motivated. The prosecutor states defendant is being prosecuted for the appropriate reason that a lengthy investigation revealed that defendant, the chief law enforcement officer in his organization, abused his authority and engaged repeatedly in serious violations of law.
Defendant has sought to obtain police records to establish that others similarly situated have engaged in conduct similar to that charged here and have not been prosecuted. However, even assuming arguendo that the records he seeks would support the "unequal hand” requirement of Klein (supra), defendant’s claim would still fail. To be entitled to a hearing, defendant would also need to make a showing that the selective application of the law was deliberately based upon a racial, religious or other impermissible standard. There is no showing of bad faith in the record at bar. Defendant’s allegations of invidious prosecutorial motive are unsubstantiated, inapposite or refuted by the prosecution.
Accordingly, the application to dismiss this indictment for invidious selective prosecution is denied.

. Defendant argues that his failure to receive notice was compounded by the People’s refusal to respond adequately to his first demand for particulars directed at a prior indictment. Since defendant made no motion for relief, the court assumes the People’s responses were legally adequate. Nonetheless, neither bill of particulars amplifies the indictment for purposes of curing the pleading defects.

. Defendant accepted the particulars furnished in the first bill of particulars for the 18 overlapping charges in the second indictment and the People urge that defendant has thus waived his right to claim prejudice now. There were 18 questions in defendant’s first demand relating to the factual allegations missing from the second indictment — one question for each count. To each of the 18 questions the prosecution responded, "Beyond the scope”. Acceptance of these answers does not spell out waiver.

. It is noted with regard to the dismissed counts that they need not have contained charges of "corrupt acts and omissions” so long as all counts were properly joinable. (See, CPL 200.20 [2] [b]; Executive Order No. 55, 9 NYCRR 1.55 [III] [c] [5].)

. The jurisdiction of the Special Prosecutor would extend to the dismissed counts as well.