662 So.2d 947 (1995)
Edward T. QUINN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 93-1789.
District Court of Appeal of Florida, Fifth District.
July 14, 1995.
Order Granting Clarification September 29, 1995.
Rehearing Denied November 13, 1995.
*948 Kirk N. Kirkconnell and David A. Henson of Kirkconnell, Lindsey and Snure, P.A., Winter Park, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carmen F. Corrente, Asst. Atty. Gen., Daytona Beach, for appellee.
W. SHARP, Judge.
Edward Quinn appeals from an order withholding adjudication of guilt, which placed him on probation for three years and imposed a fine of $68,500.80. After a jury trial, *949 Quinn was found guilty of conspiring to fraudulently represent an entity as a socially and economically disadvantaged business enterprise in violation of section 337.135, Florida Statutes (1989), a third-degree felony. Quinn argues numerous points on appeal, which we find without merit or not sufficient to cause a reversal of his conviction. However, we agree the fine imposed as "pecuniary gain" pursuant to section 775.083(1)(f) cannot be sustained, based on the evidence presented in this case.
Quinn, his former wife, Carol Quinn, and an administrator in the Quinn's business (Markings and Equipment Corporation), Sue Bell, were charged with a conspiracy to violate section 337.135 between July 1987 and March 23, 1989. That statute provides:
It is unlawful for any individual to fraudulently represent an entity as a socially and economically disadvantaged business enterprise for purposes of qualifying for certification as such an enterprise under a program of the department designated to assist socially and economically disadvantaged business enterprises in the receipt of contracts with the department of the provision of goods or services. Any person who violates this provision is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Carol Quinn was also charged with fraudulently representing that Markings was a socially and economically disadvantaged business enterprise. Carol Quinn and Sue Bell pled guilty to the charges brought against them. This appeal concerns Edward Quinn only.
The evidence at trial showed that Carol Quinn and her sister-in-law incorporated Markings in 1980. Its function was to paint stripes on highways. Because Markings was owned and operated by women, it qualified as a socially and economically disadvantaged business enterprise.[1] The disadvantaged business enterprise or DBE program was established by the federal government to increase the participation of minority and women-owned companies in the field of construction. Under this program, the state sets goals on certain federal aid contracts. The goals range from three to twelve percent. The prime contractor must subcontract out a set percentage of subcontracts to DBEs. The Department of Transportation maintains a list of DBEs and a company seeking certification must apply and be recertified each year.
From January 1988 through February 1989, Markings obtained 268 contracts, of which 79 were Department of Transportation contracts. The total value of Marking's contracts during that period was 5.6 million and those through the Department of Transportation was 3.3 million, or about 59 percent of its total business. In 1987, 1988 and 1989, Markings' application to the Department asserted that Carol Quinn owned the company and exercised day-to-day control over it. That was the sole basis for its being considered a DBE, although by 1987 Carol no longer exercised day-to-day control or management over Markings.
The testimony established that in 1980, Edward Quinn, Carol's husband, began working at Markings. Carol and he experienced marital difficulties and, by 1987, Carol no longer came to the office. The evidence was overwhelming that during 1987 to 1989, Edward controlled and ran the company. Carol and Edward were divorced in October of 1989. As part of the divorce settlement, Carol transferred to Edward 67 percent of the stock in Markings. It ceased to be a potential DBE because of the shift in ownership of stock at that time, and Edward sold the company to a third party in 1990.
However, during the period of 1987 through 1989, Edward, Carol, Sue and others went to considerable lengths to keep agencies (including the Department) with minority programs from discovering that Carol no longer was running the company on a day-to-day basis. All calls involving such programs were referred to Carol. The Department of Transportation did do an inspection, but *950 Markings had advance notice. Carol met with a Department representative at Markings' offices. Edward's office had been transformed with pictures and knickknacks to make it look like it was Carol's office, and employees were instructed to act like it was normal for Carol to be there. Sue Bell testified that Edward told her that with regard to the DBE certification process, "we would just have to do what we have to do."

I. Construction of section 337.135
Quinn argues that the trial court should have granted his motion to dismiss for failure to state a crime, that it should have granted his motion for acquittal, and it erred in not giving an instruction requested by the defense because the criminal statute requires, as an essential element, that the state must allege and prove the fact that Markings was not a DBE. The indictment charged that Quinn conspired with others to:
[F]alsely represent that Carol Quinn exercised day-to-day control of Markings ... for the purpose of qualifying Markings ... as a disadvantaged business enterprise, thereby giving Markings ... a competitive advantage in gaining subcontracts with the prime contractor of the Florida Department of Transportation ... for the purpose of continuing Markings' ... certification as a disadvantaged business enterprise in violation of sections 777.04 and 337.135, Florida Statutes.
Although the indictment does not exactly track the statute, it comes sufficiently close in our view, to fully put Quinn on notice of the nature of the criminal offense with which he was charged. It would be superfluous to require the indictment to say Quinn conspired to falsely represent Markings was a DBE by falsely representing Carol exercised the day-to-day control over the company. Obviously, that was the false representation which qualified Markings as a DBE. And, if the indictment merely tracked the statute by saying Quinn conspired to falsely represent Markings was a DBE, it might be challenged as too vague because it fails to particularize what false representations were conspired about.
We also reject Quinn's argument that the state had to charge and prove that Markings was not a DBE from 1987 to 1989. That would require the state to explore and disprove all possible ways Markings could have qualified as a DBE. Proving such negative scenarios could make a conviction under that statute almost an impossibility. We construe the statute as making it a crime to make or conspire to make a false representation in order to obtain certification. It is the making of a false claim or conspiracy to make that false claim that the statute is designed to punish.
Quinn also argued he was not guilty of this crime because at all material times Markings was a legitimate DBE. In connection with this theory, Quinn argued he was entitled to an instruction that if Markings were a DBE during the times charged in the indictment, he should be found not guilty. The transcript of the charge conference indicates that the trial court eventually agreed with defense counsel that it would be a defense to the charge if the jury found Markings was a DBE. It instructed the jury:
Before you can find Edward T. Quinn, Jr. guilty of criminal conspiracy, that State must prove the following two elements beyond a reasonable doubt:
Number one, that the intent of Edward T. Quinn was that the offense of fraudulent representation as a socially or economically disadvantaged business enterprise would be committed ...
The elements of the crime of fraudulent representations as an economically or socially disadvantaged business enterprise are:
One, it was represented Markings Equipment Company was a socially or economically disadvantaged business enterprise.
Two, at the time of those representations, persons involved knew that they were fraudulent.
Three, that such fraudulent representations were made for the purpose of qualifying Markings Equipment Corporation for certification as a disadvantaged business enterprise.

*951 A disadvantaged business enterprise or DBE, as we've been referring to it, means a small business concern which is at least fifty-one percent owned by one or more socially or economically disadvantaged individuals; and B, whose management and daily business operations are controlled by one or more of a socially and economically disadvantaged individual who owns it. Women shall be presumed to be socially and economically disadvantaged individuals.
Where the actual management of the enterprise is contracted out to individuals other than the owners, those persons who have the ultimate power to hire and fire the managers can be considered as controlling the enterprise for the purpose of this rule chapter.
It would be a defense to the charge of fraudulent representations as a socially or economically disadvantaged business enterprise if you find that Markings and Equipment Corporation has, in fact, qualified to be a disadvantaged business enterprise during the time period alleged in this Indictment . ..
It thus appears that Quinn got the benefit of his theory as a defense to the conspiracy charge. Under the Administrative Code,[2] a socially and economically disadvantaged owner can contract to another the day-to-day control of a business under certain circumstances, without jeopardizing DBE status. However, Carol's applications to DOT asserted that there were no written, oral, tacit or other agreements concerning the control of Markings and that she herself made the day-to-day decisions. The evidence showed that Carol and Edward went to great lengths to make it look like Carol ran the company on a daily basis, and the jury could well have disregarded their assertions at trial that on retrospect, she contracted out day-to-day control to Edward. Quinn offered no other theory by which Markings could have qualified as a DBE. We conclude that the instructions given were adequate, given the evidence adduced at trial and Quinn's theory of his defense.[3]
Quinn also contends that section 337.135 and the certification provisions of the Florida Administrative Code fail to give fair warning of what conduct is criminalized and thus they deny due process. See Hermanson v. State, 604 So.2d 775 (Fla. 1992) (due process is lacking when persons of common intelligence cannot be expected to discern what activity the statute is seeking to prohibit); State v. Gray, 435 So.2d 816 (Fla. 1983) (a statute which forbids or requires the doing of an act which defines the act in such a vague way that people of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law). This statute standing alone might be subject to a constitutional vagueness criticism were it not for the fact that "socially and economically disadvantaged business enterprises" are adequately defined by the administrative Code,[4] and the *952 certification process to be used in obtaining contract advantages with the Department are also set forth in detail by the Code.[5]
In support of his position, Quinn points out he was charged with conspiring to falsely represent that Carol exercised day-to-day control of Markings. However, the Administrative Code permits an owner to contract out day-to-day management of an enterprise without losing its status as a DBE. It provides:
Where the actual management of the enterprise is contracted out to individuals other than the owner(s), those persons who have the ultimate power to hire and fire the managers can be considered as controlling the enterprise for the purposes of this rule chapter.
Since the Code permits surrender of day-to-day control without loss of DBE status, Quinn argues his conviction for conspiring to show Carol had control, violates his right to due process.
We reject Quinn's argument for two reasons. First, the Code clearly requires that control of a DBE by the owner be real and not merely on paper.[6] Second, Quinn's asserted *953 defense was that although Carol retained the ultimate power to control the company, she had contracted out to him the day-to-day control. As noted above, however, the applications for certification filed with the Department in the relevant time periods all claimed no such contract or delegation of powers existed. This defense asserted by Quinn failed, not because the Code was too vague on this point, but because the jury disbelieved it.

II. Evidentiary Rulings
Quinn argues that the trial court erred in admitting at trial a credit recommendation memorandum prepared by a credit analyst working for First Union National Bank. The report contains the statement that although Edward Quinn owns less than a majority interest in Markings, the company is under his complete administrative control. It was introduced into evidence through the testimony of John Strudwick, a commercial loan officer with the Bank. Strudwick testified that the report was made during 1988 at a time Markings was being investigated for the purpose of establishing its credit worthiness for a loan, that it was prepared by the credit analyst working at the bank, that it was made during the normal course of business and it was part of the normal practice of the bank to make such reports. Strudwick admitted he did not know where the information in the report came from, and the credit analyst who prepared the report did not testify. The conclusion that Markings was under the complete administrative control of Quinn could be the credit analyst's opinion based on his observations of the company at the time, or it could be a conclusion told him by Quinn or some other unidentified person.
The defense objected to the introduction into evidence of this credit report on the ground that it contained hearsay within hearsay and was irrelevant. A party must make a proper and timely objection at trial in order to preserve the point for appeal, as we have long held.[7] In this case, a proper objection would have been that the state failed to provide a proper predicate for admission of the credit report as a business record pursuant to section 90.803(6) of the Florida Evidence Code. Hearsay can be admissible under numerous exceptions, one of which is the business records exception.
In order to be admissible as a business record pursuant to section 90.803(6), the record must be shown to have been:
1. made at or near the time of the event recorded,
2. by or from information transmitted by a person with knowledge, and
3. kept in the course of a regularly conducted business activity and
4. that it was the regular practice of that business to make such a record.[8]
In this case, the credit report appears to meet all but the second requirement. Strudwick was unable to testify what person was the source of the statement that Markings was under the complete administrative control of Edward Quinn.
It is well established that although the person who made the report need not have personal knowledge of the matter recorded, the information contained in the report "must be supplied by persons with knowledge who are acting within the course of the regularly conducted business activity. If the initial supplier of information is not acting within the course of the business, the information in the record cannot qualify for admission. Statements from persons who are not acting within the regular course of *954 the business may be admissible if they fall within another exception." Charles Ehrhardt, Florida Evidence Vol I (1994) at 6256.
In summary, had the identity of the person making the statement been shown, the credit report could have been admitted as a business record. For example, if the credit analyst had been the source of the opinion, based on his examination of the business, that would have made it an admissible business record. Or, if the source had been Quinn, that would have made it partly admissible as an admission against interest. However, without identifying the source of the statement, as a person with knowledge, the credit report probably should not have been admitted.[9]
The defense's objection that this was hearsay on hearsay does not specifically address this predicate problem. We are thus reluctant to fault the trial judge for having admitted it. Further, even if the objection had been properly made, the admission of the credit report appears to us to have played a very minor role in this trial. There was overwhelming evidence and testimony from numerous Markings' employees, as well as the Quinns, that Edward Quinn was running the company on a day-to-day basis, during the relevant time period. In fact, Quinn made no effort to prove otherwise. Admission of the credit report, even if erroneous, was harmless in the context of this trial.[10]
Quinn also argues that the trial court erred in allowing Sue Bell to testify that during the relevant time period Quinn directed her to send a letter to Broward County which falsely represented that he had no involvement in the management of Markings, so that Markings could qualify under that County's disadvantaged business enterprise program. Initially, we question whether this point was preserved for appeal. Counsel for the defense objected to the sufficiency of the notice required by section 90.404(2)(b)1 only in passing, and said merely that the evidence was improper.
Section 90.404(2)(b)1 provides:
When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment of information.
Quinn's argument that the notice given in this case was defective because it did not state the purpose of its use goes beyond an express requirement of the statute. To the extent State v. Zenobia, 614 So.2d 1139 (Fla. 4th DCA 1993) appears to require specific reasons or explanations of what the jury might deduce from the collateral crime evidence, we respectfully disagree.
Section 90.404(2)(a) provides that fact similar evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as motive, opportunity, intent, preparation, plan, knowledge, and identity. It is not admissible to solely prove bad character or propensity. It is not clear in this case that making misrepresentations to Broward County would have resulted in a different criminal charge. However, the time frame when it was made coincides with the times relevant to the crimes in this case, and the misrepresentations are identical. They were likewise made for the same motive or reasons  to get business for Markings it did not rightfully deserve. As such, the evidence helped to prove Quinn's motive, intent, plan and absence of mistake in making nearly identical misrepresentations to the Department. Quinn was shown by this evidence to be well aware of the DBE certification process, and the necessary representations which had to be made in order to obtain an advantageous business status for Markings. We agree with Quinn this evidence was damaging to his case, but it was also *955 relevant and we think admissible against him pursuant to section 90.404(2)(a).

III. Imposition of a Fine Pursuant to Section 775.083
After Quinn was found guilty of a conspiracy to violate section 337.135, a third degree felony, he was placed on probation and fined $68,500.80. Section 775.083 provides in relevant part:
(1) A person who has been convicted of a noncriminal violation may be sentenced to pay a fine. Fines for designated crimes and for noncriminal violations shall not exceed:
* * * * * *
(c) $5,000 when the conviction is of a felony of the third degree.
* * * * * *
(f) Any higher amount equal to double the pecuniary gain derived from the offense by the offender or double the pecuniary loss suffered by the victim.
At the hearing following which the fine was imposed, both the state and the defense agreed that there was no "victim" involved in this case. The state took the position that the court could find pecuniary gain existed by looking at the 3.5 million dollars in Department contracts Markings was awarded and performed during the relevant time periods. It could further look at the fact that Quinn later sold Markings for 3.4 million dollars, of which 1.7 million dollars was allocated for a "non-compete" clause. However, the court stated for the record that the state failed to show that any part of the 3.5 million in contracts was paid to Quinn, nor did it show what portion of that sum was profit to Markings. There was no dispute but that Markings satisfactorily performed the contracts so clearly some substantial portion was labor and cost of materials, which cannot be considered "gain derived from the offense."
We must start with the proposition that all criminal statutes, including ones imposing monetary fines for having committed a crime, must be strictly construed in favor of the defendant.[11] If the statute does not clearly impose a fine in this amount, it cannot stand. In this case we think the fine was erroneously imposed because the state failed to show that Quinn received any part of the contracts' proceeds received by Markings, nor did it show what part of the DBE's contracts proceeds represented Markings' profit.
Two cases decided in New York state have held that the state need not show the defendant received any gain derived from an offense so long as the state was able to show the defendant directed the gain to a third person.[12] Both of these cases involved situations where third parties received monies to which they were not entitled in any regard. In this case that showing was not made or attempted. For all we know, Markings may have lost money on some of the Department's contracts. The burden was on the state to at least establish some portion was profit. Section 775.083(1)(f) requires proof of actual pecuniary gain.[13] In the context of construction contracts, this means there must have been some profit.
Accordingly, we affirm the judgment. We vacate the sentence and provide that the fine imposed must not exceed $5,000, pursuant to section 775.083(1)(c). We remand to reconsider imposition of a fine.
AFFIRMED in part; Sentence VACATED; REMANDED to assess fine.
COBB and GRIFFIN, JJ., concur.

ON MOTION FOR CLARIFICATION
We grant the state's motion for clarification and affirm the order below, including the imposition of the fine. After issuance of our opinion, the state brought to *956 our attention the fact that the parties had stipulated that Markings and Equipment Corporation had received a net profit of $75,000 from its contracts with the Department of Transportation. Under People v. Kramer and People v. Severino,[1a] the state need not show that Quinn personally received any gain from the offense so long as it shows that Quinn directed the gain to a third person or entity. We conclude that the state met its burden of proof under section 775.083(1)(f), and affirm the order in toto.
AFFIRMED.
COBB and GRIFFIN, JJ., concur.
NOTES
[1] To qualify for DBE status, the business must be at least 51% owned and controlled by one or more socially and economically disadvantaged individuals. Fla. Admin. Code R. 14-78.005(3). Women are presumed to be socially and economically disadvantaged individuals. Fla. Admin. Code R. 14-78.002(1).
[2] Fla. Admin. Code R. 14-78.005(3)(e).
[3] Thomas v. State, 494 So.2d 240 (Fla. 4th DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987); Ortega v. State, 438 So.2d 934 (Fla. 3d DCA 1983); Turner v. State, 423 So.2d 594 (Fla. 3d DCA 1982).
[4] Florida Administrative Code Rule 14-78.005 provides:

(3) A firm seeking certification as a DBE shall meet the following standards:
(a) The firm must be a small business concern as defined by Section 3 of the Small Business Act (15 U.S.C. § 632) and Title 13 C.F.R. Part 121... .
* * * * * *
(b) The firm must be at least 51 percent owned and controlled by one or more socially and economically disadvantaged individuals, or, in the case of a publicly owned business, at least 51 percent of the stock must be owned and controlled by one or more socially and economically disadvantaged individuals.
Florida Administrative Code Rule 14-78.002(1) provides:
"Socially and Economically Disadvantaged Individuals" means those individuals who are citizens of the United States or lawfully admitted permanent residents and who are women, Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, or Asian-Indian Americans, and any other minorities or individuals certified as disadvantaged by the Small Business Administration pursuant to Section 8(a) of the Small Business Act (15 U.S.C. § 637) and implementing regulations. Individuals in the following groups are presumed to be socially and economically disadvantaged; provided, however, this presumption is rebuttable:
(a) "Black Americans," which includes persons having origins in any of the black racial groups of Africa;
(b) "Hispanic Americans," which includes persons of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish or Portuguese culture or origin, regardless of race;
(c) "Asian-Pacific Americans," which includes persons whose origins are from Japan, China, Taiwan, Korea, Vietnam, Laos, Cambodia, the Philippines, Samoa, Guam, the U.S. Trust Territories of the Pacific and the Northern Marianas;
(d) "Native Americans," which includes persons who are American Indians, Eskimos, Aleuts, or Native Hawaiians;
(e) "Asian-Indian Americans," which includes persons whose origins are from India, Pakistan, and Bangladesh;
(f) Women.
[5] Florida Administrative Code 14-78.007 provides:

(1) All firms, including the DBE partner in a joint venture, shall complete and submit a schedule a  Certification Form No. 1. Firms wishing to participate as a joint venture shall in addition complete and submit a Schedule B  Certification Form No. 2. The schedule(s) shall be signed by the authorized representative of the business entity and notarized. A firm certified by the Small Business Administration shall in addition submit a copy of the letter approving the firm's participation in the Small Business Administration Section 8(a) program.
(2) The following procedures shall be applicable to any application for certification as a DBE:
(a) Within 30 days after receipt of an application, the Department shall examine the application and notify the applicant in writing of any apparent errors or omissions and request any needed additional information.
(b) The Department may make such inquiries and investigations as deemed necessary and may conduct an on site review to verify and evaluate the information provided by the applicant.
(c) The Department shall approve or deny every application for certification as a DBE within 90 days after receipt of the original application or receipt of the timely requested additional information or correction of errors or omissions. .. .
[6] Florida Administrative Code 14-78.005(3)(e) provides:

(e) To be certified under this rule chapter, the DBE shall be one in which the socially and economically disadvantaged owner shall also possess the power to direct or cause the direction of the management, policies, and operations of the firm and to make day-to-day as well as major business decisions concerning the firm's management, policy, and operations. The discretion of the socially and economically disadvantaged owners shall not be subject to any formal or informal restrictions (including, but not limited to, bylaw provisions, partnership agreements, trust agreements or charter requirements for cumulative voting rights or otherwise) which would vary managerial discretion customary in the industry.
In determining whether the socially and economically disadvantaged owners also possess the power to direct or cause the direction of the management policies and operations of the firm and have the requisite decision-making authority, the Department may look to the control lodged in the owners who are not socially and economically disadvantaged individuals. If the owners who are not socially and economically disadvantaged individuals are disproportionately responsible for the operation of the enterprise or if there exists any requirement which prevents the socially and economically disadvantaged owners from making business decisions without concurrence of any owner or employee who is not a socially and economically disadvantaged individual, then the enterprise, for purposes of this rule chapter, is not controlled by socially and economically disadvantaged individuals and shall not be considered a DBE within the meaning of this rule chapter. Where the actual management of the enterprise is contracted out to individuals other than the owner(s), those persons who have the ultimate power to hire and fire the managers can be considered as controlling the enterprise for the purposes of this rule chapter.
[7] Anderson v. State, 546 So.2d 65 (Fla. 5th DCA 1989); Woodson v. State, 483 So.2d 858 (Fla. 5th DCA 1986); Gilling v. State, 443 So.2d 1024 (Fla. 5th DCA 1983); Thomas v. State, 424 So.2d 193 (Fla. 5th DCA 1983).
[8] Lowe's of Tallahassee v. Giaimo, 552 So.2d 304 (Fla. 1st DCA 1989); Saul v. John D. and Catherine T. MacArthur Foundation, 499 So.2d 917 (Fla. 4th DCA 1986).
[9] See Conley v. State, 620 So.2d 180 (Fla. 1993).
[10] State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); Steward v. State, 619 So.2d 394 (Fla. 1st DCA 1993); Dixon v. State, 589 So.2d 1011 (Fla. 4th DCA 1991), rev. denied, 599 So.2d 655 (Fla. 1992); Erickson v. State, 565 So.2d 328 (Fla. 4th DCA 1990), rev. denied, 576 So.2d 286 (Fla. 1991).
[11] Perkins v. State, 576 So.2d 1310 (Fla. 1991); Bivens v. State, 586 So.2d 442 (Fla. 4th DCA 1991); § 775.021(1), Fla. Stat. (1993).
[12] See People v. Kramer, 132 A.D.2d 708, 518 N.Y.S.2d 189 (N.Y.A.D. 1987), affirmed, 72 N.Y.2d 1003, 534 N.Y.S.2d 912, 531 N.E.2d 633 (1988); People v. Severino, 91 Misc.2d 898, 398 N.Y.S.2d 828 (1977); affirmed, 63 A.D.2d 1010, 406 N.Y.S.2d 105 (1978).
[13] Comparato v. State, 419 So.2d 1131 (Fla. 1st DCA 1982).
[1a] See People v. Kramer, 132 A.D.2d 708, 518 N.Y.S.2d 189 (N.Y.A.D. 1987), affirmed, 72 N.Y.2d 1003, 534 N.Y.S.2d 912, 531 N.E.2d 633 (N.Y. 1988); People v. Severino, 91 Misc.2d 898, 398 N.Y.S.2d 828 (1977), affirmed, 63 A.D.2d 1010, 406 N.Y.S.2d 105 (N.Y.A.D. 1978).