■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STUART KRAMER, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered June 24, 1986, convicting him of insurance fraud in the first degree (six counts), grand larceny in the third degree (Penal Law former § 155.30 [six counts]), offering a false instrument for filing in the first degree (eight counts), bribing a witness (two counts), criminal solicitation in the fourth degree (two counts), conspiracy in the fifth degree and violation of Judiciary Law § 482, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reversing the convictions of bribing a witness (two counts), vacating the sentences imposed thereon, and dismissing those counts of the indictment, and by vacating the sentences imposed on the grand larceny convictions; as so modified, the judgment is affirmed and the matter is remitted to the Supreme Court, Kings County, for resentencing as to the grand larceny convictions.

The charges against the defendant were the culmination of a lengthy investigation instituted after the Grievance Committee for the Second and Eleventh Judicial Districts discovered widespread improprieties with respect to the defendant's law practice.

The investigation revealed, and the People's evidence at trial established, that the defendant had a network of "chasers" who referred automobile accident victims to his law office. In return, the defendant gave the chasers, who included tow truck operators and insurance brokers, $100 to $200 for each case they referred, depending upon the type of injury.

After the defendant interviewed the clients, he would determine the type of medical treatment the client would purportedly receive so as to meet the threshold for recovery under the New York no-fault insurance statute (Insurance Law § 5101 *et seq.*). The defendant had explained to his office manager that in order to maintain an action, there must be death, disfigurement, loss of an organ or bodily function, a fracture, or medical treatment for 90 out of 180 days. There were certain doctors and chiropractors who had agreed to supply the defendant with false diagnoses and to submit bills for fictitious visits so the threshold could be met. In particular, one radiologist, Dr. Carmona, would falsely diagnose a fracture, known in the defendant's office as a "Carmona fracture", for $100. In addition to the payments from the defendant, the doctors would be reimbursed by the insurance companies for their services.

After the defendant received the requisite medical information, or "special damages", it would be submitted to the insurance company for possible settlement. Representatives from various insurance companies testified that they relied upon the special damages in determining whether or not to settle a claim. For each of the cases for which the defendant was convicted of insurance fraud, the medical information was shown to be false.

Once the case was settled, the client would be notified to

come into the office to sign the release and endorse the settlement check. The People established, through the use of the defendant's office files and closing statements, that he withheld more of the settlement proceeds than he was entitled to receive under the rules governing contingency fee cases.

The clients were always given less than the defendant indicated they had received on the closing statements he filed with the Office of Court Administration (hereinafter OCA). The defendant also misrepresented on the retainer agreements he was required to file with OCA the source of the referral for the client and the date on which he was retained.

Finally, the People presented evidence that the defendant, upon learning of the investigation into his activities, "prepped" his former clients to give false testimony before the Grand Jury. He also retained attorneys to represent some of the clients while they testified before the Grand Jury.

We find the above evidence was sufficient as a matter of law to support the defendant's convictions for conspiracy, violation of Judiciary Law § 482, insurance fraud, grand larceny, offering a false instrument for filing, and criminal solicitation. Moreover, upon the exercise of our factual review power, we are satisfied that the evidence with respect to those counts established the defendant's guilt beyond a reasonable doubt and that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

With respect to the bribery counts, however, the evidence was legally insufficient to establish that the benefit conferred upon the former clients (i.e., providing them with attorneys) was based upon an agreement or understanding that their testimony would thereby be influenced *(see,* Penal Law § 215.00). To the contrary, the witnesses testified they were never told they had to testify a certain way in order to receive the money for the attorney's fee and the one attorney who testified at trial specifically stated he merely told the witness to tell the truth, and never discussed her testimony with the defendant.

The defendant's contention that his convictions for offering a false instrument for filing should be reversed is without merit. The retainer and closing statements were properly introduced into evidence *(see,* 22 NYCRR 691.20), and the trial court's charge with respect thereto was correct *(see, People v Kase,* 76 AD2d 532, *affd* 53 NY2d 989).

Equally without merit is the defendant's argument that the court should not have granted the jury's request to have

certain testimony read back during its deliberations on Sunday *(see, People v Payne,* 89 Misc 2d 99, *revd on other grounds* 67 AD2d 934).

Nor did the trial court err in imposing a fine pursuant to Penal Law § 80.00 without first holding a hearing thereon, as there was sufficient evidence in the record to support the finding of the amount of the defendant's gain from his crimes *(see, People v Goldfeld,* 60 AD2d 1). The fact that the proceeds of the crimes may have been remitted to the defendant's professional corporation, and not to him personally, is of no moment since gain to a third party of the defendant's choice constitutes "the defendant's gain" within the meaning of Penal Law § 80.00 *(see, People v Severino,* 63 AD2d 1010). Similarly, any expenses incurred by the law firm incidental to the fraudulent scheme are not to be taken into consideration in computing the amount of the gain *(see, People v Gross,* 51 AD2d 191). We further find that, with the exception of the grand larceny convictions on which the sentence exceeds the permissible maximum, the sentence imposed was neither harsh nor excessive.

The defendant's remaining contentions have been considered and found to be without merit. Lawrence, J. P., Rubin, Kunzeman and Kooper, JJ., concur. *[See,* 133 Misc 2d 239.]