OPINION OF THE COURT
Joseph Kevin McKay, J.
The defense moves for dismissal of the accusatory instrument pursuant to CPL 170.30. For the reasons stated below, the motion is granted.
The defendant is charged in a misdemeanor information with one count of a violation of Judiciary Law § 482, which is designated a misdemeanor in Judiciary Law § 485, and one count of falsifying business records in the second degree in violation of Penal Law § 175.05, a class A misdemeanor. The defendant is a duly admitted and currently practicing attorney in the State of New York, with offices in New York County.
The charges arise out of the defendant’s acceptance of an unsolicited offer by a State government informant, posing as a private investigator, to refer a client with a personal injury case, followed by the signing of a retainer agreement by defendant and an undercover police officer—posing as an accident victim—who was brought to defendant by the informant. It is not charged that any of the above-described conduct of defendant was by itself criminal, although, unbeknownst to defendant, the entire incident was a governmental fabrication, apparently created in the course of an expanded investigation of other persons, including the informant, regarding "ambulance chasing”.
What is alleged to have transformed this transaction into criminal conduct by the defendant is what took place after the signing of the retainer agreement. At that point, the information charges, the defendant promised to pay the informant for referring this civil matter to him, and instructed the informant *85 to send, him a bill for investigative services which were not in fact to be performed, in order to disguise the payment.[1]
The informant submitted his bill the following day, and was in turn paid by defendant with a $350 law firm check. This conduct, the prosecution alleges, constituted the Judiciary Law crime of "employ[ing] any person for the purpose of soliciting * * * legal business” (Judiciary Law § 482), as well as the Penal Law crime of "falsifying [his own firm’s] business records” (Penal Law § 175.05).
With regard to the Judiciary Law count a respectable argument has been made that section 482 is so broad in its proscription of efforts to solicit legal business by attorneys (more precisely the employment by attorneys of any person for that purpose) that it runs afoul of the First Amendment and the latest decisions on the subject from the United States Supreme Court and the New York Court of Appeals. (See, Attorney Advertising and Solicitation Should Not Be a Crime, 44 Record of Assn of Bar of City of NY, at 634-647 [1989]; see also, Edenfield v Fane, 507 US 761 [1993]; Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557 [1980]; Ohralik v Ohio State Bar Assn., 436 US 447 [1978]; Bates v State Bar of Ariz., 433 US 350 [1977]; National Assn. for Advancement of Colored People v Button, 371 US 415 [1963]; Matter of von Wiegen, 63 NY2d 163 [1984], cert denied sub nom. Committee on Professional Stds. v von Wiegen, 472 US 1007 [1985]; Matter of Koffler, 51 NY2d 140 [1980], cert denied sub nom. Joint Bar Assn. Grievance Comm. v Koffler, 450 US 1026 [1981].) In brief, it has become clear that an absolute ban on attorney solicitation is inconsistent with the preferred freedom of speech guaranteed by the First and Fourteenth Amendments of the United States Constitution. Since commercial speech is at stake, more latitude is accorded the State and reasonably tailored regulation of solicitation activity is permissible. If only the time, place and manner of speech are affected, the State need only show that the restrictions are reasonable and rationally related to a legitimate State interest. If, on the other hand, the content of speech is affected, and the cases previously cited strongly suggest that professional advertising and solicitation customarily involve the content of speech, then the State has a *86 heavier burden to demonstrate a substantial State interest as well as regulation that is reasonably tailored to serve that interest in a proportionate and not unduly restrictive fashion. (Edenfield v Fane, supra, at 766, 773; Central Hudson Gas & Elec. v Public Serv. Commn., supra, at 566; Matter of von Wiegen, supra, at 173.)
In light of these principles and precedents it is difficult to envision an interpretation of this statute which would he sufficiently circumscribed to enable it to withstand the required constitutional scrutiny. On its face this statute makes it a crime for an attorney to employ anyone to assist, even indirectly, in the solicitation of legal business. This language would seem to cover public relations personnel of the most discreet and tasteful sort. Even granting that the State has an important interest in preventing "ambulance chasing” in its most pejorative form, how can it be said that such a sweeping proscription is a reasonably tailored, proportionate and not unduly restrictive means of accomplishing that goal? (Compare, Ohralik v Ohio State Bar Assn., supra.)
Nevertheless, trial courts must be extremely cautious about holding statutes unconstitutional. Indeed the City Bar Committee article cited above, aside from arguing the unconstitutionality of the statute, is primarily a brief for its legislative repeal, relying on the elaborate set of ethical codes and court rules in place to guide, supervise and, where appropriate, to punish (noncriminally) the legal profession in this area.[2] Moreover, it is well settled that courts ought to decide cases on the narrowest possible grounds and avoid constitutional issues where a full and just result can still be obtained. (People v Felix, 58 NY2d 156, 161 [1983].) But the most pointed reason to avoid the constitutional issue in this case is the requirement that the defendant show that his charged conduct falls within the protective zone of the First Amendment.[3] At least with respect to the payment aspect of defendant’s charged conduct, in *87 my view he has not made that showing and it seems unlikely that he would be able to do so prior to trial. Therefore, notwithstanding my grave reservations about the constitutionality of this statute, I will focus my attention upon the issue of whether the defendant’s alleged conduct in fact and law actually contravened the statute’s mandate.
The defense has also put forth a substantial challenge to the propriety of geographical jurisdiction (venue) in Kings County. (CPL 20.40 [1].) The nexus to Kings County for the Judiciary Law count is somewhat tenuous but markedly stronger than the connection found insufficient in People v R. (160 Misc 2d 142 [Sup Ct, Kings County 1994]), even though the ties to Brooklyn were in fact created by agents for the prosecution. For example, in addition to receiving a telephone call from the informant in Brooklyn, the defendant was told that the caller was a Brooklyn investigator who was offering to refer a potential client who had been in an accident in Brooklyn. Unless there is to be a blanket rule that governmental contrivances can never satisfy the factual predicates needed for proper venue, these contacts should be and, I hold, are sufficient to base venue in Kings County.
The nexus to Kings County for the count of falsifying business records, on the other hand, is virtually nonexistent without the Judiciary Law count, since all the relevant conduct appears to have taken place in the defendant’s office in New York County. Nevertheless, since the counts belong together, I will assume there is proper jurisdiction for both counts and I will proceed to decide the legal sufficiency of each.
The factual chronology recited earlier in this opinion raises the threshold question of whether the defendant’s payment to the informant can be said to constitute "employ[ment]” of that informant "for the purpose of’ soliciting legal business or the procurement of a retainer, which legal business and retainer had already been secured. (Judiciary Law § 482.) If any meaning is to be given to the words "for the purpose of’, then grammatically and logically the answer must be in the negative.
An analogy can be found in bribery prosecutions, wherein it is axiomatic that the bribe must be offered or paid before the illegal conduct sought to be unlawfully procured is done. If there is a payment after the fact, without any prior agreement or understanding, it may constitute the lesser crimes of giving *88 or receiving an unlawful gratuity, but not bribery. (See, Penal Law §§ 215.00, 200.30, 200.35; see also, People v Graham, 57 AD2d 478 [4th Dept 1977], affd 44 NY2d 768 [1978]; People v Hendy, 64 AD2d 407 [1st Dept 1978].) Likewise, even if a benefit is conferred upon a witness, but it is not based upon a prior or concurrent agreement or understanding that it was being given for the unlawful purpose of improperly influencing the testimony of the witness, such conduct will not constitute the crime of bribery. (People v Tran, 80 NY2d 170 [1992], rearg denied 81 NY2d 784 [1993]; People v Schepis, 206 AD2d 278 [1st Dept 1994]; People v Kramer, 132 AD2d 708, 710 [2d Dept 1987], affd 72 NY2d 1003 [1988].)
Similar considerations inhere in bad check criminal cases. (Penal Law §§ 190.05, 155.05 [2] [c].) The prosecution must be able to plead and prove an intent by a defendant to utter a worthless check at the time it is uttered, not by the mere happenstance of subsequent insufficient funds, or even a subsequent closing of the account. In the latter situations, a given defendant may remain civilly liable on the check, absent good defenses to the underlying debt, but such person does not incur criminal liability. (People v Vogelmann, 177 AD2d 1000 [4th Dept 1991].)
The foregoing represent examples of literal, but not necessarily strict, construction of criminal statutes. While courts must not be excessively technical in interpreting penal laws, criminal liability can never be imposed beyond the reasonable scope of the mandate of a given statute. (People v Gottlieb, 36 NY2d 629 [1975].) Overly liberal constructions of'criminal laws must always be avoided, especially where, as here, the proscribed conduct is a malum prohibitum, not a malum in se (People v Scott, 26 NY2d 286, 291 [1970]), and even more so when the particular criminal statute is found outside the Penal Law. (See, Penal Law § 5.00.) It is not a matter of allowing a miscreant to be absolved based on a technicality. Rather, it is adherence to a principle rooted in our societal disdain for using the criminal law, with its threat to liberty, to remedy what may be at worst a civil or ethical wrong.
Viewed in this light it cannot be said that even the most generous interpretation of the prosecution’s pleading renders the defendant’s charged conduct violative of this statute. This count must therefore be and hereby is dismissed.
There is also a legal sufficiency problem found in the second count, with respect to intent to defraud. As a necessary element of this count, intent to defraud must be pleaded and *89 eventually proven beyond a reasonable doubt by the prosecution. Yet, there is not even a suggestion in the accusatory instrument that there was an intent on the part of the defendant to defraud any person, group or institution by the filing of the investigator’s bill with the records of his own law firm. Granted, if defendant deliberately required the investigator/ informant to submit a false bill as a condition of payment, as I must assume happened for purposes of this motion, an intent to deceive could easily be inferred, as well as intent to cover up an illegal or unethical payment.[4] However, even an intent to deceive and conceal another crime does not eliminate the required element of intent to defraud, commonly understood to mean to cheat someone out of money, other property or something of value. (See, People v Saporita, 132 AD2d 713, 715 [2d Dept 1987]; see also, 2 CJI[NY] PL 175.05 [1], at 1177.) It is apparent from the nature of this transaction, considered in the light most favorable to the People, that while there may well have been an intent to deceive, there was absolutely no intent to defraud anyone by the filing of the investigator’s bill with his own law firm’s records. Therefore, I conclude that the second count is also insufficient as a matter of law, and it too is dismissed.
The motion to dismiss is granted. The information is dismissed.

. The defense disputes this allegation and asserts that investigative services were in fact performed, such as transportation of the client, obtaining the police report and locating witnesses. However, this would be an issue of fact for trial, and for purposes of this motion I must take the People’s allegation as true.

. See, e.g., Code of Professional Responsibility DR 2-101 (22 NYCRR 1200.6) and DR 2-103 (22 NYCRR 1200.8); see also, Rules of Appellate Division, First Department (22 NYCRR) § 603.18; Rules of Appellate Division, Second Department (22 NYCRR) § 691.2; Rules of Appellate Division, Third Department (22 NYCRR) § 806.2; Rules of Appellate Division, Fourth Department (22 NYCRR) § 1022.17.

. "In the First Amendment context, the [United States Supreme] Court has permitted attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected” because "[a]n overbroad statute might serve to chill protected speech.” (Bates v State Bar of Ariz., supra, at 380.) But the application of this *87 overbreadth analysis has not been extended to commercial speech cases. (Supra, at 381.)

. See Penal Law § 175.10, falsifying business records in the first degree, a class E felony, originally charged in this case and later reduced on the motion of the District Attorney to the present charge of falsifying business records in the second degree. The first degree count contains an additional element of intent to conceal the commission of another crime.