OPINION OF THE COURT
Joseph Kevin McKay, J.
The defense now moves pursuant to CPL 170.30 for dismissal of the second accusatory instrument filed by the prosecution on December 22, 1997, following this court’s dismissal of the first information by decision and order dated December 5, 1997. (People v Hankin, 175 Misc 2d 83 [Crim Ct, Kings County 1997].) For the reasons stated below, the motion is granted.
As in the original pleading, the defendant is again charged with one misdemeanor count under Judiciary Law § 482 and one misdemeanor count of falsifying business records in the second degree (Penal Law § 175.05). The defendant is a duly admitted and currently practicing attorney in the State of New York, with offices in New York County.
*118 The charges arise out of the defendant’s acceptance of an unsolicited offer by a State government informant, posing as a private investigator, to refer a client with a personal injury case, followed by the signing of a retainer agreement by defendant and an undercover police officer — posing as the would-be accident victim and potential client — who was brought to defendant by the informant. Unbeknownst to defendant, the entire incident was a governmental fabrication, apparently created in the course of an expanded investigation of other persons, including the informant, regarding “ambulance chasing”.
The principle fact in the first information, also pleaded in the second, which the prosecution has claimed made this transaction criminal is what took place after the signing of the retainer agreement. At that point it is alleged that the defendant promised to pay the informant for referring this civil matter to him, and instructed the informant to send him a bill for investigative services which were not in fact to be performed, in order to disguise the payment.[1] The new pleading at issue on this motion inserts some additional facts with regard to past practice between the parties, casting this case in a markedly different light, which I will discuss shortly.
The informant submitted his bill the following day, and was in turn paid by defendant with a $375 law firm check. This conduct, the prosecution continues to assert, constituted the Judiciary Law § 482 crime of “employing a person for the purpose of soliciting legal business”, as well as the Penal Law crime of falsifying (his own firm’s) business records.
I will dispose of the second count first because the prosecution has not made any substantial changes from the way this count was pleaded in the first information, nor did the prosecution proceed by way of a motion to reargue or notice of appeal. (See, People v Lopez, 235 AD2d 496 [2d Dept 1997]; CPLR 2221; CPL 450.20 [1]; 460.10.) Therefore, on these procedural grounds and for the reasons cited in my prior decision (People v Hankin, supra, at 88-89), I now once again dismiss this count of falsifying business records in the second degree.
With regard to the Judiciary Law count the prosecution has substantially revised the pleading in one respect, which I will *119 now proceed to analyze.[2] In an obvious effort to overcome the court’s prior ruling that a post facto payment by defendant to the investigator for referring a civil case did not contravene the plain language of Judiciary Law § 482 (People v Hankin, 175 Misc 2d, supra, at 87-88), the prosecution has now set forth in some detail the conversations and negotiations between the parties that led up to the payment in question, and included the allegation that “on several occasions prior to October 8, 1996, Informant [investigator] referred personal injury claimants to the defendant * * * for legal representation, and that on each of those occasions, the defendant paid Informant a sum of money for the referral.” (People v Hankin, second misdemeanor information, dated Dec. 18, 1997.)
This new pleading leaves intact, as it must, the fact that all the discussions and negotiations between the defendant and the informant for payment in this case, as well as the payment itself, were handled after the retainer agreement was signed by the defendant and the undercover agent posing as the accident victim. This circumstance was fundamental to my earlier ruling dismissing this count. Nevertheless, the prosecution now argues that the revised pleading enables the People to claim and prove at trial that this referral of a client for legal services was accepted by defendant with a concurrent, implied agreement and understanding, based upon past conduct between the parties, that informant would be paid for this referral, if the prospective client in fact agreed to be represented by defendant, and that only the amount of the payment was uncertain and subject to negotiation. It follows, the People argue, that this transaction constituted employment by defendant of a nonlawyer for the purpose of referring legal business to defendant in criminal violation of Judiciary Law § 482.
It would appear that this supplementary allegation regarding past practice between the defendant and the investigator, however vague and imprecise with respect to time frame and *120 any arrangements that may have been agreed to, may satisfy the required element of employment in the statute for pleading purposes. (See, People v Meola, 193 App Div 487 [2d Dept 1920]; Matter of Marlow, 225 App Div 252 [2d Dept 1929]; Matter of Fieldsteel, 228 App Div 470 [1st Dept 1930]; Matter of Rosenthal, 250 App Div 421 [2d Dept 1937]; Matter of Robinson, 229 App Div 119 [1st Dept 1930] [all construing the Judiciary Law’s predecessor statute, Penal Law of 1909 § 270]; see also, Matter of Kronenberg, 136 AD2d 264 [2d Dept 1988]; People v Kramer, 132 AD2d 708 [2d Dept 1987], supra.)
Assuming, therefore, that these new allegations enable the prosecution to succeed in scaling the employment hurdle in this statute, the question arises whether the referral of legal business is synonymous with the solicitation of such business, and equally violative of this criminal statute. I begin with the definition of the word “solicit”. “Solicit. To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication [citation omitted]. To awake or excite to action, or to invite. The term implies personal petition and importunity addressed to a particular individual to do some particular thing.” (Black’s Law Dictionary 1248-1249 [5th ed 1979].) Similar language is used to describe the various degrees of criminal solicitation in article 100 of the Penal Law and also to define the word in the dictionary of the English language. (See, Webster’s Third New International Dictionary 2169 [unabridged 1986 ed].) The term is not otherwise defined in the Judiciary Law, and must be understood to have its ordinary meaning in this statute.
The focus of the statute and the principal evils sought to be proscribed, prevented and penalized by this statute are the harmful effects on the public and potential clients, who may be pressured, misled or otherwise wrongfully induced, specifically by nonlawyers (not subject to the normal disciplinary processes of the Bar), to engage the services of a lawyer. The prosecution does not claim that such conduct took place in this case.
The mere fact that an investigator comes into contact with a potential client who may want or need a referral to a lawyer does not by itself mean that the investigator actually, affirmatively solicited that client for the lawyer. Plainly, there is a difference between active solicitation of a client and the mere *121 passive referral of such client. The former, at a minimum, necessarily includes initiating the contact by the “solicitor”, and involves efforts to obtain by asking or persuading, implying a personal petition. (See, Matter of Koffler, 51 NY2d 140 [1980], cert denied sub nom. Joint Bar Assn. Grievance Comm. v Koffler, 450 US 1026 [1981]; see also, Matter of Rapport, 186 AD2d 344, 345 [3d Dept 1992].)
As presently written, this broad and constitutionally questionable statute would seem to be violated on its face by an attorney who directs a nonlawyer to recruit legal business for the attorney, even without pressured or deceitful tactics. But, I hold, it is not violated by the mere referral of legal business, which is all that is pleaded in this case.[3] In fact, in this case we know that before the defendant became in any way involved in the matter there took place a collusive government plan between the investigator (informant) and the “client” (undercover agent), concerning which the defendant had no knowledge and over which the defendant exercised no control. It is not alleged that the defendant instigated any solicitation or recruitment by the investigator toward this prospective client.[4] As such, there was, as far as this pleading is concerned, *122 no solicitation by defendant, and this flaw is inherent in and fatal to this prosecution.[5]
This analysis of the element of solicitation has logically led me to revisit the issue of the constitutionality of the statute in question as an alternative basis for dismissal. In the court’s earlier opinion in this case recognition was given to the apparent overbreadth of Judiciary Law § 482 and the grave risks it presents to the freedom of commercial speech afforded professionals and the public by the First Amendment, according to precedents from the United States Supreme Court and the New York Court of Appeals. (People v Hankin, 175 Misc 2d, supra, at 85-86, and authorities cited therein.)[6] Nevertheless, I previously declined to reach the constitutional issue because of my conclusion that the prosecution had failed to plead adequately all the necessary elements of the Judiciary Law crime in the first place, and because I doubted that the defendant could successfully invoke standing to challenge the constitutionality of the statute, given the allegation that he wrongfully paid money to the investigator.[7]
In light of the revised pleading, I now take a different view of the defendant’s standing. Rather than focus on the payment aspect of the defendant’s conduct in isolation, it now seems more appropriate to consider the transaction as a whole and evaluate all of the defendant’s charged speech and conduct by means of the constitutional tests mandated by the relevant United States Supreme Court precedents to determine, as an alternative basis for my decision on this motion to dismiss, whether the defendant has standing to challenge the constitu *123 tionality of this statute and whether, as applied to him in this prosecution, it is invalid.[8]
As previously found by this court, and apparently conceded by both sides, Judiciary Law § 482 purports to regulate primarily content-based commercial speech and related conduct. As such, it should be reviewed by means of the four-part test set forth by the Supreme Court in Central Hudson (supra, at 566; see also, New York State Assn. of Realtors v Shaffer, 27 F3d 834, 841 [2d Cir 1994]).
The first prong of this test also serves as the benchmark to determine defendant’s standing: whether the commercial speech at issue concerns lawful activity and is not misleading. (Central Hudson Gas & Elec. v Public Serv. Commn., supra, at 566.) The acquisition, whether by referral or solicitation, of legal business and clients by or on behalf of lawyers duly admitted to the Bar of an appropriate jurisdiction is surely a time-honored and lawful activity, notwithstanding that it can be performed in an improper way and is subject to regulation. To hold that the use of nonlawyers for such solicitation or referral is per se illegal based upon the Judiciary Law would be to beg the question and assume rather than decide the answer. Moreover, neither the manner nor the content of the speech and conduct in this case, as pleaded, was misleading in any way and has never been so characterized. It follows that the defendant’s speech and conduct in this case meet the first prong of the Central Hudson test and that he has standing to challenge the constitutionality of the statute used to prosecute him.[9]
The framework for the analysis that remains is best stated in the Supreme Court’s own words: “In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the *124 First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.” (Central Hudson Gas & Elec. v Public Serv. Commn., supra, at 566.)
Manifestly, the interest of the State underlying this statute is avoiding the evils previously mentioned to which the public and potential clients may be vulnerable: champerty, coercive pressure tactics, misleading representations, false promises, and encouragement to fabricate claims and inflate damages. (See, Ohralik v Ohio State Bar Assn., 436 US 447 [1978], supra.) These are all tangible evils, the avoidance of which is surely a substantial interest of the State, worthy of proscription, particularly when they may be caused or facilitated by nonlawyers, who are not subject to the same professional regulation and discipline as attorneys.[10] Indeed, the defense in this case has not disputed the proposition that the State does have a substantial interest in regulating the legal profession to prevent such evils from occurring.
That matter having been decided, we move now to the third and fourth prongs of the Central Hudson test. Does this statute directly advance the identified State interest, and, if so, is the statute more extensive than necessary to serve that interest? It is relatively easy to accept the proposition that this legislative ban on the use of nonlawyers serves the State’s interest in protecting the public from vexatious, intimidating, fraudulent and other wrongful conduct in connection with prospective lawsuits, although one could debate the extent to which this ban promotes that interest more indirectly rather than directly. After all, nonlawyers are not necessarily more capable of such conduct than lawyers themselves. (See, Ohralik v Ohio State Bar Assn., supra.) Nevertheless, it seems more advisable to focus on the far more obvious infirmity in this statute, its gross overbreadth.
It seems impossible to view this ban on the use of nonlawyers to solicit legal business as no broader than necessary to *125 serve the State’s interest and avoid the evils identified above. The statute does not even allude to any of those evils, but rather criminalizes any use of nonlawyers, however straightforward and innocuous, to recruit legal business. The statute makes no effort to restrict or refine its scope to proscribe even generic types of coercive or fraudulent solicitation tactics, or in any other way to limit its reach. As observed in the court’s earlier opinion, “This language would seem to cover public relations personnel of the most discreet and tasteful sort.” (People v Hankin, supra, at 86.) To the extent it may be argued that the very act of “solicitation” implies, at a minimum, pressure tactics, the short answer is that no such tactics were used in this case, but that did not stop the prosecution from bringing this criminal action.[11]
Accordingly, I conclude that this second information does not sufficiently plead a violation of Judiciary Law § 482 by this defendant because of the lack of solicitation activity by him or linked to him. In the alternative, I hold that this statute is unconstitutional as applied to the defendant’s charged conduct. In either case, this count and the entire information must be dismissed.
The motion to dismiss is granted. The second information is dismissed.

. The defense disputes this allegation and asserts that investigative services were in fact performed, but for purposes of this motion I must take the People’s allegation as true.

. Neither in the first nor the second information is there even a hint that the defendant acted in an improper, deceitful or overbearing manner toward his prospective client, or that he engaged in any of the chicanery, larcenous, champertous or fraudulent behavior, such as efforts to encourage unwanted or meritless litigation, fabricate tort claims or inflate damages, which is the type of conduct usually associated with past prosecutions of “ambulance chasers”. (See, e.g., People v Kramer, 132 AD2d 708 [2d Dept 1987], affd 72 NY2d 1003 [1988].) Similarly, there is no allegation that the investigator/informant ever engaged in or offered to engage in such wrongful conduct or pressure tactics toward the potential client either on his own or on behalf of or at the instance of the defendant.

. Not only is there no solicitation activity described in either the first or second information, but that deficiency is reinforced by the prosecutor’s bill of particulars, wherein it is stated regarding any specific acts of the defendant to aid solicitation: “The acts are specifically detailed in the complaint, namely, the defendant paid a non-lawyer for a case referral.” (Bill of particulars, dated Aug. 21, 1997, at 6.)

. Elsewhere in the motion papers, outside of the pleadings, there is a reference to the investigator initially approaching the undercover agent to offer her assistance in securing a lawyer in connection with her (feigned) accident, after which the investigator was later contacted in turn by the undercover agent and recruited to become an informant and they subsequently planned to make a controlled overture toward defendant to refer the case. There is also a reference by the defense as follows: “On his own initiative, or the initiative of the Kings County District Attorney’s Office, Vince Connor [the investigator/informant] enthusiastically sought to persuade the party allegedly injured in the aforementioned car accident towards retaining the defendant’s law firm.” (Affirmation of Michael Handwerker, Esq., dated Aug. 21, 1997, at 3.) All of this means that the prosecution conceivably could attempt yet another repleading to allege actual solicitation activity by the investigator, although not directed by defendant, and then make the argument that this was aided by the defendant because he had at some unspecified times in the past and would in the future offer to pay the investigator for the referral. To the extent these allegations and arguments are already in this case by implication I conclude that the remoteness of the defendant from the solicitation activities of the investigator is too great to allow for the *122 imposition of criminal liability on the defendant under Judiciary Law § 482 for the conduct of the investigator.

. This is not to suggest that a sting operation can never be used to catch true violators of this antisolicitation or ambulance-chasing statute. While government operatives would normally be an integral part of such a scheme and play the roles of client and/or investigator, evidence could be obtained, possibly facilitated by the use of wires or tapes, demonstrating the unlawful dispatching of recruiters, or the use of abusive recruitment tactics directed by or at least approved by the targeted attorney.

. See, Attorney Advertising and Solicitation Should Not Be a Crime, 44 Record of Assn of Bar of City of NY, at 634-647 (1989); see also, Edenfield v Fane, 507 US 761 (1993); Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557 (1980); Ohralik v Ohio State Bar Assn., 436 US 447 (1978); Bates v State Bar of Ariz., 433 US 350 (1977); National Assn. for Advancement of Colored People v Button, 371 US 415 (1963); Matter of von Wiegen, 63 NY2d 163 (1984), cert denied sub nom. Committee on Professional Stds. v von Wiegen, 472 US 1007 (1985); Matter of Koffler, 51 NY2d 140, supra.

. See, Bates v State Bar of Ariz., supra, at 380-381; see also, People v Hankin, supra, at 86, n 3.

. Mindful that to hold that a statute is unconstitutional on its face would be tantamount to ruling that the statute could never be interpreted or applied under any circumstances in a constitutional manner, I am limiting my decision to the statute’s application in this single case. (City Council v Taxpayers for Vincent, 466 US 789, 797-798 [1984].) I reach this constitutional issue now as an alternative basis for dismissal, and to guide the parties in future steps that may be taken to replead or appeal.

. Contrary to my earlier view (People v Hankin, supra, at 86-87), I do not consider as fatal to defendant’s standing the allegation that he paid the investigator and attempted to disguise the payment. The heart of this transaction is the defendant’s retention of a “client”, accomplished by lawful and nonmisleading protected speech, which protection should not be deemed forfeited because of a questionable payment and an allegedly improper bill arguably used to circumvent the challenged statute.

. Note, however, that the particular statute utilized in this prosecution is aimed specifically and exclusively at lawyers who use nonlawyers to solicit business. This factor undercuts the State’s interest somewhat in that, independent of this criminal statute, lawyers remain subject to elaborate professional disciplinary rules and procedures. (See, People v Hankin, 175 Misc 2d, supra, at 86, n 2.)

. If it is ultimately held by an appellate court that the use of pressure or similarly wrongful or offensive tactics is a necessary element of such a prosecution, then it would necessarily follow that the defendant did not violate this statute as so construed.