**Leonard N. FLAMM, Plaintiff,**

v.

**AMERICAN ASSOCIATION OF UNIVERSITY WOMEN and the AAUW Legal Advocacy Fund, Defendants.**

**No. 98 Civ. 0151(DC).**

United States District Court, S.D. New York.

Dec. 17, 1998.

## AMENDED OPINION

CHIN, District Judge.

In this diversity case, plaintiff Leonard N. Flamm, a lawyer, alleges that defendants American Association of University Women ("AAUW") and the AAUW Legal Advocacy Fund ("LAF") defamed him by describing him in a directory of professionals as "an 'ambulance chaser' with interest only in 'slam dunk cases.'"

The question presented is whether the statement constitutes actionable defamation. Defendants move to dismiss, arguing that the statement is not actionable because it is an expression of opinion.

I agree. Although the statement is susceptible of a defamatory meaning and was irresponsibly made, it was not intended to be, and cannot reasonably be construed as, a statement of objective fact. Rather, no matter how distasteful, it was clearly an expression of opinion protected by the First Amendment and the New York state constitution.[1] Accordingly, defendants' motion is granted and the complaint is dismissed.[2]

## STATEMENT OF THE CASE

### A. The Facts

As alleged in the complaint, the facts are as follows:

Flamm, a practicing lawyer since April 1975, specializes in employment discrimination. (Cmplt. ¶¶ 2–3). He has "developed and maintained a reputation for competence, diligence, and ethical behavior" in New York and throughout the United States. (Id. ¶ 3).

AAUW is a not-for-profit organization that provides a variety of services to women employed in higher education or women attending institutions of higher education. (Id. ¶ 4). In 1981, AAUW created LAF, also a not-for-profit organization. (Id. ¶ 10). LAF provides legal referral services for women students, faculty, and staff throughout the Unit-

Law Offices of Leonard N. Flamm, by Leonard N. Flamm, Norman Mednick, Jill Schwartz, New York City, NY, for plaintiff.

Davis Wright Tremain, LLP, by Laura R. Handman, Carolyn K. Foley, New York City, NY, for defendants.

1. The New York state constitution provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects." N.Y. Const., Art. I, § 8.

2. AAUW also moves to dismiss alleging that the complaint does not sufficiently plead that it was

involved in the creation and/or distribution of the directory. For purposes of this motion, I assume that the complaint sufficiently pleads AAUW's involvement. Accordingly, I refer to AAUW and LAF collectively.

ed States. (*Id.* ¶ 5). LAF solicits attorneys and other professionals to join its "Network." Network participants provide legal and other professional services to women facing discrimination in higher education. (*Id.* ¶¶ 10–12). AAUW and LAF are separate but "affiliated" entities. (*Id.*).

LAF and AAUW "jointly publish" a variety of directories and distribute them to attorneys and other professionals who participate in the LAF Network. (*Id.* ¶¶ 8, 13). One of these directories lists persons who are willing to participate nationwide in LAF's attorney referral service. (*Id.* ¶ 8).

In 1994, LAF solicited Flamm to be a Network participant and he agreed to participate. (*Id.* ¶¶ 14–17). In October 1997, defendants distributed LAF's 1997 directory to Network participants throughout the United States. (*Id.* ¶ 20). It listed approximately 275 Network participants, most of whom were attorneys. (*Id.*). Each listing contained the address and telephone number of the Network participant. (*Id.* ¶ 21). Some listings also included a few sentences describing the participant's area of practice or expertise, background information concerning the participant's affiliations to avoid conflicts of interest, and fees for consultation. (*Id.; see also* Stroud Aff., Ex. A).

Flamm's listing in the 1997 directory, however, was different. Directly below his listing, the following statement appeared: "Mr. Flamm handles sex discrimination cases in the area of pay equity, harassment and promotion. *Note: At least one plaintiff has described Flamm as an 'ambulance chaser' with interest only in 'slam dunk cases.'*" (*See* Stroud Aff., Ex. A) (emphasis in original). Of the 275 listings in the directory, only the listing for Flamm contains negative comments. (*Id.*).

### B. *Prior Proceedings*

Flamm filed suit on November 26, 1997 in New York State Supreme Court for defamation. Defendants removed the suit to this Court, basing subject matter jurisdiction on diversity of citizenship.

Flamm contends that the italicized sentence about him in LAF's 1997 directory is "irresponsibly false, libelous *per se,* and recklessly defamatory." (*Cmplt.* ¶ 23; *see also id.* ¶¶ 25, 26, 28–30, 32). He also contends that the publication of this statement has adversely affected his reputation. (*Id.* ¶¶ 35–36).

This motion followed.

### *DISCUSSION*

### A. *Legal Standards for Defamation*

■ To state a claim for defamation, plaintiff must allege that: (1) defendants made a false and defamatory statement of fact; (2) about him; (3) to a third party; (4) resulting in his injury. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* No. 95 Civ. 0508, 1998 WL 704112, at *9 (E.D.N.Y. Oct.7, 1998) (citing *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61–62 (2d Cir.1993)). Defendants do not dispute that Flamm has properly alleged the second, third, and fourth elements of a defamation claim. Rather, defendants argue that plaintiff fails to allege the first element as a matter of law.

■ In deciding whether Flamm has properly alleged the first element, that defendants made a false and defamatory statement of fact, I must consider: (1) whether the statement is reasonably susceptible of a defamatory meaning; and (2) whether, even if the statement is defamatory, it is an expression of opinion that is protected by the First Amendment and/or the New York state constitution.

### 1. *Defamatory Meaning*

■ In a defamation case, a jury is responsible for determining whether a plaintiff has been defamed. As a threshold matter, however, the court must decide whether the statement alleged to have injured plaintiff is reasonably susceptible of the defamatory meaning imputed to it. *Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir.1997). In deciding this threshold question, the court should consider not only the meaning of the words as they would be commonly understood, but also the meaning of the words "in the context of their publication." *Id.* (citing *Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373, 625 N.Y.S.2d 477, 481, 649 N.E.2d 825 (N.Y.

1995); *James v. Gannett Co.*, 40 N.Y.2d 415, 386 N.Y.S.2d 871, 875, 353 N.E.2d 834 (N.Y. 1976)).

### 2. *Fact or Opinion*

■ Even if a statement is susceptible of defamatory meaning, it is still not actionable under federal law or New York law[3] if it is an expression of opinion. *Id.* at 196; *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 903, 501 N.E.2d 550 (N.Y.1986) ("An expression of pure opinion is not actionable. It receives federal constitutional protection accorded to the expression of ideas, no matter how vituperative."). The First Amendment and the New York state constitution protect the "breathing space [that] freedoms of expression require in order to survive," and they do so by providing "immunity for statements of opinion relating to matters of public concern that do not contain a provably false factual connotation." *Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 909, 567 N.E.2d 1270 (N.Y.) (internal quotations and citations omitted), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991).

■ Resolution of the fact/opinion issue is a matter for the court. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 817, 623 N.E.2d 1163 (N.Y.1993). In making this legal determination, the court needs to strike an appropriate balance between the "need for vigorous public discourse and the need to redress injury to citizens wrought by invidious or irresponsible speech." *Milkovich*, 497 U.S. at 14, 110 S.Ct. 2695. As the Second Circuit recently commented, however, "[c]ategorizing a defendant's statements as either fact or opinion ... is often not an easy task." *Levin*, 119 F.3d at 196.

■ New York courts have developed a three-step analysis to assist courts in distinguishing statements of fact from statements of opinion. First, the court considers whether the specific language used has a precise and readily understood meaning. Second, the court determines whether the statement is capable of being proven false. Finally, the court evaluates whether the context of the statement signals to the reader that what is being conveyed is likely to be an opinion rather than a statement of objective fact. *Brian v. Richardson*, 87 N.Y.2d 46, 637 N.Y.S.2d 347, 350–51, 660 N.E.2d 1126 (N.Y. 1995); *accord Levin*, 119 F.3d at 196.

While New York's tripartite analysis differs from the inquiry under the First Amendment (*see Brian*, 637 N.Y.S.2d at 350–51, 660 N.E.2d 1126), the thrust of the analysis under both New York law and federal constitutional law is "whether the *reasonable reader* could have concluded that [the challenged statements] were conveying *facts* about the plaintiff." *Levin*, 119 F.3d at 196 (emphasis added, internal brackets omitted, and citing *Gross*, 603 N.Y.S.2d at 817, 623 N.E.2d 1163); *see also 600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 589 N.Y.S.2d 825, 829, 603 N.E.2d 930 (N.Y. 1992), *cert. denied*, 508 U.S. 910, 113 S.Ct. 2341, 124 L.Ed.2d 252 (1993).

Rather than "parsing out and evaluating the challenged statements in isolation, New York courts look to the immediate context and the broader social context of the statement, and evaluate the impact that the statements would have on a reasonable reader." *Levin*, 119 F.3d at 197 (citations omitted). If the statements read in context are "readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." *Id.* (citation omitted). Nonetheless, even if some statements may be characterized as hypothesis or conjecture, "they may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts

---

**3.** I do not address the choice of law issue in this decision, as the parties apparently agree that New York law applies. Although federal and New York state courts apply different analyses in determining whether a statement is fact or opinion, *see Weinstein v. Friedman*, No. 94 Civ. 6803, 1996 WL 137313, at *17–19 (S.D.N.Y. Mar. 26),

*aff'd*, 112 F.3d 507 (2d Cir.1996), the overall thrust of the analysis is the same. Thus, even though I decide this motion based on New York law and rely primarily on New York cases, the result would be no different if I applied federal law.

that are not disclosed to the reader." *Id.* (citation omitted).

## B. *Application*

### 1. *Defamatory Meaning*

■ In this case, the statement at issue is susceptible of defamatory meaning and, to the extent defendants argue to the contrary, I assume as much for purposes of this motion. It is beyond the pale to call a lawyer an "ambulance chaser." Such a seriously derogatory comment calls the lawyer's competence, ethics, and character into question. The more difficult question raised by this case, however, is whether the statement, even if defamatory, constitutes fact or non-actionable opinion.

### 2. *Fact or Opinion*

#### a. *Precise and Readily Understood Meaning*

■ Defendants contend that the statement " 'ambulance chaser' with interest only in 'slam dunk cases' " is rhetorical hyperbole meant in a figurative, not literal, sense. (Defs.Mem. at 14–18). To support this contention, defendants cite a slew of cases in which charged language—*i.e.*, rhetorical hyperbole—was held to be understood only as the speaker's opinion and not a literal statement of objective fact. *See, e.g., Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 285–86, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (use of word "traitor" described as "merely rhetorical hyperbole, a lusty and imaginative expression of contempt felt by union members towards those who refuse to join," held not actionable); *Steinhilber,* 508 N.Y.S.2d at 906–07, 501 N.E.2d 550 (statement that plaintiff, identified as a "scab," lacked talent, ambition, and initiative held not actionable); *Shinn v. Williamson,* 225 A.D.2d 605, 639 N.Y.S.2d 105, 106 (2d Dep't 1996) (reference to plaintiff as "two-faced back stabber" in jacket cover accompanying album is not actionable because it is "personal opinion and rhetorical hyperbole"); *Ram v. Moritt,* 205 A.D.2d 516, 612 N.Y.S.2d 671, 672 (2d Dep't 1994) (reference to plaintiff as a "liar," a "cheat," and a "debtor" held not actionable as "personal opinion and rhetorical hyperbole rather than objective fact"); *Polish Ameri-*can Immigration Relief Comm., Inc. v. Relax, 189 A.D.2d 370, 596 N.Y.S.2d 756, 757, 758 (1st Dep't 1993) (statement calling plaintiffs "thieves who should have been put to prison long ago" held to be "clearly rhetorical hyperbole and vigorous epithet" and therefore "not-actionable opinion under Federal or State constitutional standards").

Because the statement in the directory is purportedly used in a loose, figurative sense, and because Flamm is not a personal injury or medical malpractice attorney, defendants argue that the reasonable reader of the directory cannot read the statement as asserting that Flamm is a lawyer who "literally chases ambulances or otherwise aggressively or unethically seeks to build his client base." (Defs.Mem. at 16). Rather, defendants maintain, "ambulance chaser" is an "obvious misnomer" that, taken together with the words "slam dunk cases," cannot be reasonably understood as conveying literal, factual information regarding Flamm's legal ethics.

Although a close question, I agree. The words complained of cannot reasonably be understood as conveying literal, factual information about Flamm despite the fact that "ambulance chaser" standing alone may have a precise meaning. Indeed, I agree with Flamm that the phrase "ambulance chaser" *does* have a specific meaning, particularly among lawyers and professionals. (Pl.Opp. at 6–8). "Ambulance chaser" is defined in Webster's Dictionary as a lawyer "who incites accident victims to sue for damages." Webster's Ninth Collegiate Dictionary 77 (9th ed.1984). It is also defined in Black's Law Dictionary as a "term descriptive of the practice of some attorneys, on hearing of a personal injury which may have been caused by the negligence or wrongful act of another, of at once seeking out the injured person with a view to securing authority to bring action on account of the injury." Black's Law Dictionary 80 (6th ed.1990). In addition, "ambulance chasing" is illegal in this state pursuant to § 479 of the New York Judiciary Law. *See People ex rel. Moses v. Adams,* 172 Misc. 143, 14 N.Y.S.2d 780, 781 (N.Y.1939) (noting that predecessor statute to § 479 was enacted for the purpose of curbing or destroying "ambulance chasing").

As recently as May 14, 1998, a New York court discussed "ambulance chasing" in a criminal case involving an attorney who was charged with employing someone to solicit legal business on his behalf. *See People v. Hankin,* 177 Misc.2d 116, 675 N.Y.S.2d 792, 794 (1998). Chief Justice Burger used the term "ambulance chaser" in a dissenting opinion criticizing the Court's holding in a case concerning media defamation of private persons. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 354–55, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (right to counsel would be gravely jeopardized "if every lawyer who takes an 'unpopular' case ... would automatically become fair game for irresponsible reporters and editors who might, for example, describe the lawyer ... as an 'ambulance chaser' for representing a claimant in a personal injury action").

Here, however, the phrase "ambulance chaser" is not being used in its literal sense. Moreover, it is coupled with the comment "with interest only in 'slam dunk cases.' " As used here, the words together simply do not have a precise and readily understood meaning. Indeed, an "ambulance chaser" is not someone who is interested only in "slam dunk cases," but rather, he is someone who is much less selective and who must "chase" after cases. Hence, even though the statement that a lawyer is an ambulance chaser standing alone arguably could be understood to ·accuse the lawyer of verifiable acts of criminal and unethical behavior, "the loose nature of the language, [and] the 'general tenor' of the remarks made" here, are such that a reasonable reader would not conclude that defendants were making factual assertions about Flamm. *See 600 West 115th Street Corp.,* 589 N.Y.S.2d at 833, 603 N.E.2d 930.

### b. *Statement Capable of Being Proven False*

Defendants argue that the statement they published by one of their referral participants was merely a subjective reaction to Flamm and that there is no independent criteria by which to judge the statement as true or false. (Defs.Mem. at 19). Defendants also argue that determining what a "slam dunk" case is would require the sort of subjective determination that courts find is not capable of being proven true or false. (Defs.Mem. at 20–21).

Flamm contends that by assessing his record as a lawyer (indeed, he has handled hundreds of job discrimination cases (*see* Cmplt. ¶ 16)), the statement in the directory is capable of being objectively proven true or false inasmuch as factual evidence could establish whether he indeed incites or induces persons to sue for damages, unethically solicits business, and/or only takes cases that he believes to be "slam dunks" or sure winners.

While I agree with Flamm to a degree, ultimately I conclude that the questions of whether a particular case is a "slam dunk" and whether a particular lawyer is "interested only in slam dunk cases" are difficult propositions to prove or disprove. I cannot envision conducting a trial, for example, where the parties try to prove or disprove whether each of a long series of cases was a "slam dunk." *See, e.g., Mogil v. Mark B. Zaia Enterprises, Inc.,* 230 A.D.2d 778, 646 N.Y.S.2d 376, 377 (2d Dep't 1996) (statement "I have been mistreated, used and robbed by this judge" made in the context of a dispute over payment for services allegedly rendered to judge by defendant was a "subjective characterization which could not be objectively verified"); *Hollander v. Cayton,* 145 A.D.2d 605, 536 N.Y.S.2d 790, 792 (2d Dep't 1988) (statements by defendant characterizing plaintiff doctor as "immoral," "unethical," and as having "mismanaged cases" were "indefinite, ambiguous, and incapable of being objectively characterized as true or false").

The statement complained of is pure opinion—the subjective reaction of one person who had been referred to Flamm. That subjective reaction simply does not lend itself to being proven true or false. *See Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219 (2d Cir.1985); *Carto v. Buckley,* 649 F.Supp. 502, 508 (S.D.N.Y.1986); *Partington v. Bugliosi,* 56 F.3d 1147, 1158 (9th Cir.1995) (it is "well supported by existing caselaw" that "statements about a lawyer's performance constitute 'subjective' statements and are not susceptible of being proved true or false").

#### c. *Context*

Even if the statement had a precise and readily understood meaning and it was capable of being proven false, I would still hold that the statement is non-actionable opinion based on the context in which it was published.

Looking at the statement as a whole, it is clear that it was the subjective reaction of one person to Flamm and not a statement of objective facts regarding Flamm's legal ethics or competence as a lawyer. Although it is troubling that only Flamm's listing in the directory contains negative comments, there is simply nothing to suggest that the negative comments are assertions of fact about Flamm and no reasonable reader of the directory would so conclude. Moreover, the fact that the context was a directory is significant in itself, for a reasonable reader would not think it likely that defendants would have included Flamm in the directory at all if the statement were a factual one.

The statement was italicized, quotation marks were used, and it was prefaced by the words, "note, at least one plaintiff has described Flamm as . . . ." At worst, it is possible that a reasonable reader would conclude that defendants agreed with the referral participant's opinion of Flamm, and that defendants published the statement because they wanted to discourage referral participants from contacting Flamm. Still, a reasonable reader would interpret the statement as an expression of *defendants'* opinion—but it would be an opinion nonetheless. The most likely interpretation of the statement is that at least one person was referred to Flamm and that Flamm refused to take her case, not because he acted unethically or was "chasing ambulances," but because he was not interested in accepting what was not a "slam dunk case."

Accordingly, given the context in which the statement was published, I hold that no reasonable reader would have believed that the statement was conveying objective, factual information about Flamm.

#### d. *Undisclosed Facts*

■ An opinion may be actionable nevertheless if it implies that the speaker's opinion is based on knowledge of facts that are not disclosed to the reader. *Levin*, 119 F.3d at 197. This exception does not apply here, notwithstanding Flamm's contention to the contrary.

Flamm contends that the description of him could be understood to imply that it was based on undisclosed facts that he "pursues getting clients in an unethical and/or overly aggressive manner." (Cmplt. ¶ 5). He also contends that the comment concerning "slam dunk cases" implies that it was based on undisclosed facts that he agrees to take only cases that "involve little or no challenge or difficulty in prosecution" or that he "lacks the legal ability or resolve to engage in substantial litigation and/or that he is not zealous in pursuit of his client's rights." (*Id.* ¶¶ 25, 30). Flamm maintains that these undisclosed facts are "objectively verifiable." (Pl. Opp. at 29).

I disagree. When read in context, the statement does not imply any undisclosed facts concerning the manner in which Flamm pursues clients or any undisclosed facts about his legal ability. Rather, the statement was clearly made by someone whose case Flamm *declined* to accept. Thus, the only reasonable impression that emerges from the statement is, as defendants urge, that "Flamm abruptly declined to represent or give advice to one potential plaintiff and that potential plaintiff was upset, frustrated, or annoyed by the encounter." (Defs.Mem. at 28). Accordingly, the opinion at issue is not based on knowledge of undisclosed facts.

### CONCLUSION

For the reasons stated herein, I hold that the statement at issue is non-actionable opinion and that the complaint therefore fails to state a claim upon which relief can be granted. Defendants' motion to dismiss is hereby granted and the complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.